Gaines, Associate Justice.
Honore Grenet died in 1882, having made a will, of which Joseph E. Dwyer was appointed independent executor. Dwyer qualified as such executor and proceeded with the administration of his trust, until September, 1884, when he departed this life, leaving the estate of Grenet not fully administered, and also leaving a will which named appel-' ant as the independent executrix thereof. Thereupon appellee Kalteyer was appointed and qualified as administrator de bonis non of Grenet’s estate, and appellant qualified as executrix of the will of Dwyer. Dwyer, during his lifetime had deposited with the San Antonio National Bank the sum of twenty-four thousand nine hundred and thirty-seven dollars and eleven cents in his name as executor; of which his executrix claimed the sum of five thousand two hundred and ninety dollars and thirty *559 cents as a balance of commissions due him on money received and expended by him, on aoeount of the estate of Q-renet..
The bank having refused to pay the entire amount of the deposit, appellee Kalteyér as administrator, brought this suit for the recovery of the money. The bank did not deny its liability, but set up the claim of appellant to the five thousand two hundred and ninety dollars and thirty cents, and asked that she be made a party, so that it might be protected by the judgment of the court in the payment of the contested sum. By agreement of the parties after the suit was instituted, all the deposit, except this sum, was paid to plaintiff by the defendant corporation; so that, as to the original cause of action at the time of the trial, it was a contest between the administrator of the estate of Grenet and the executrix of the will of Dwyer as to the title to this sum—the bank being the stake holder. But plaintiff, Kalteyer, answering the intervening petition of Mrs. Dwyer, set up by way of cross-action, that Joseph Dwyer had failed to account for the assets of the estate of Grenet which had come to his hands, and claimed a judgment over against appellant, as executrix of the will of her husband. The plaintiff, as administrator, recovered a judgment against the bank for five thousand two hundred and ninety dollars and thirty cents, and against the intervener as executrix for the sum of thirty-two thousand nine hundred and eighty dollars and forty-seven, cents, from which the latter now appeals.
The assignments of error are more than fifty in number, but they need not be considered in detail. The determination of a few questions presented by the assignments will be sufficient for the purposes of this appeal.
In the first place it is insisted that an administrator de bonis non who succeeds an independent executor, has no power to sue his predecessor for property of the estate, for which the latter has not accounted. But article 1960 of the Revised Statutes provides that the administrator of an estate not administered ■“shall have power to settle with the former executor or administrator of the estate, and to receive and receipt for all such portions of the estate as remain in his hands. He shall have power to bring suit on the bond or bonds of the former executor or administrator for all the estate that has not been accounted for by such former executor or administrator.” Now, it is true that >a.n executor who administers an estate free from the control of the county court may be relieved by the will of the testator *560 from giving bond, and there may be no bond to sue. upon. There was no bond required in this case and none was given, Bat the object of the executor’s or administrator’s bond is merely to provide security, that he “shall well and truly perform all the duties required of him under the appointment.” (Rev. Stats., art. 1890.) The bond adds nothing to the obligation of the principal. An executor who gives no bond, being relieved therefrom hy the will, is under precisely the same obligation to faithfully administer his trust as if. a bond were given. His successor is entitled to all the property and money of the estate in his hands and to demand of him a full and complete settlement of his administration. An examination of chapter 13, title 37 of the Revised Statutes shows beyond controversy that it was the purpose of the Legislature to make a subsequent administration hut the continuation of the former, and to enable the administrator de bonis non to recover of his predecessor, not only such property and funds as remained in his hands, but to recover any loss that may have accrued through his mal-administration of the trust. That the remedy can be more conveniently and certainly exercised through-the succeeding administrator than when left to the heirs or creditors, is quite apparent. We think the question 'substantially settled by the previous decisions of this court. (Martel v. Martel, 17 Texas, 392; Francis v. Northcote, 6 Texas, 185; see also Todd v. Willis, 66 Texas, 704, in which the cases bearing upon this question are reviewed.) We conclude that the court did not err in overruling intervener’s exceptions to the cross petition of plaintiff, in so far as it set up the want of power on the part of plaintiff to maintain his cross action against intervener.
It is, however, urged that. the special exceptions to plaintiff’s cross petition, on the ground that the allegations were too vague and indefinite, should have been sustained. The cross petition alleged the value of the estate which had come to the hands of J. E. Dwyer as executor of G-renet’s will, as shown by the inventory, as well as of some other assets belonging to the estate, which were received by him. Reference was made to the inventory and supplemental inventory marked respectively “exhibit A" and. “exhibit B,” but, in fact, no exhibits were annexed to tiis pleading; and, therefore, the reference to them amounts to nothing. But we think it unnecessary to set out the entire inventories of the estate in the cross petition. The value of the 'property, as shown by them, was stated; the amount paid over *561 to the creditors by the executor was alleged; and the value of ¡the assets turned over to the administrator de bonis non was set out; and from these allegations it appeared that a large portion of the estate was not accounted for. We think this a suffi•cient prima facie showing, to call a trustee to account. The ¡inventories were made out by intervenor’s testator himself, and were a matter of record. We know of no useful purpose that could be subserved by copying them into the pleading. As to ¡the expenditures by Dwyer as executor on behalf of the estate, they were best known to his executrix. The plaintiff could not be expected to itemize in his cross petition the credit side of .Dwyer’s account. It was sufficient to show the amount of his -receipts and of his lawful expenditures, in a general way, so ¡that it appeared therefrom that there was a portion of the estate which had not been properly accounted for. We conclude, therefore, that the court did not err in overruling the exceptions of intervenor to the cross petition against her.
We do not think the court erred in referring the matters of account to an auditor. The estate was large, involving several hundred thousands of dollars, and in its settlement was embraced the results of the mercantile business of the testator, which had been continued by the executor for about two years. ,It would seem that the appointment of an auditor was not only proper but necessary. We think, however, that in our practice the auditor should be confined as nearly as practicable to the mere statement of account, and that disputed questions of fact should not be referred to him, in so far as it may be avoided. The purpose of the appointment is to have an account so made up that the undisputed items upon either side may be eliminated from the contest, and the issues thereby narrowed to the points "actually in dispute. Still our decisions hold that disputed facts may be submitted that he may hear evidence, and that his "report upon the facts held conclusive unless exceptions be taken specifically to his findings. (Whitehead v. Perie, 15 Texas, 11; Barclay v. Tarrant County, 53 Texas, 256; Hughes v. Christy, 26 Texas, 233.) Either party may except to the conclusions of the auditor, and thus secure the right of trial by jury upon any 'issue presented in the case.
The next question is upon the construction of the will of Honors Grenet. The court below held that under the will J. E. Dwyer, as executor, had no power to continue the mercantile business of his testator. Omitting the first and second articles, *562 i which relate to the testator’s children, and do not bear upon the I question before us, the will (including its two codicils) is as ¡follows:
“The State oe Texas, ) County of Bexar. j
I, the undersigned, Honoré Grenet,
French citizen, established as a merchant in the City of San Antonio, county seat of the County of Bexar and State of Texas, one of those which compose the Republic of the United States of America, being on the point of undertaking a voyage to Europe, which is always attended with danger, have resolved to dispose of my goods, foreseeing my eventual death, that is what I do by the present testament, in manner and form as follows:
H: * ❖ * $$$$$$
“Art. 3. Wishing to avail myself of the power conferred on me by law, I constitute as the guardian of the person and estate of my minor children, Mde. Gerard, widow, born Emily Grenet, my sister, rentiers domiciliated at Monthrois, in France, to the friendship of whom I recommend my children, aforesaid, in order that she may direct them in accordance with the good prlciples by which she is governed; and in order to render more easy for my said sister, Emily Grenet, widow Gerard, the accomplishment of the onerous duty which I impose upon her, I constitute her my testamentary executrix, conferring upon her for a year and a day the possession of that part of my property which shall he in France at the time of my death; and, as to my property in Texas, I will that my sister Emily Grenet, widow Gerard, aforesaid, be entirely, free from the obligation of giving any security whatever to respond for the justice of her admisfration; she shall not be held to furnish any security whatever to answer her action as executrix, having absolute confidence in her fidelity.
“Art. 4. I dispense, so far as I may, with the requirements of law; I do not wish that the county court shall have ■anything to do with my estate, except to receive proof of my ..present testament and record it. . It shall also receive the inventory, which shall be made in conformity with the law, of the property which constitutes my estate.
“Art. 5. As soon as my death is assured, I will that my mercantile affairs shall be immediately brought to a stop and my store closed and shut up. I charge with this care Mr. Auguste *563 Fretelliere, merchant, in San Antonio, to whom I shall, at my departure, leave my letter of attorney. He shall make haste to secure all my store books, and to notify my testamentary executrix aforesaid. He shall also take the most effective means to prevent all dilapidation (waste) to my property, and keep my goods in good condition until my aforesaid sister shall, in execution of the power herein conferred upon her, undertake the direction of my affairs and receive his accounts. The said Mr. Fretelliere will attend also provisionally to the well-being of such of my children as shall be in Texas.
“Such is my will, written in this document by the hands of another at my request; and after having read the same, I declare that it contains the expression of my intention, in which I declare I persist. This done and subscribed in San Antonio, in the presence of the witnesses required by law.
“June 1,1869. (Signed) H. Grenet.
“Witnesses: Detler Kisser, A. Hetesinger.
“San Antonio, July 11, 1874, at eleven o’clock in the evening, on the eve of my departure for France, I come back anew to renew what precedes, and desire that all I possess be divided into equal parts among my five children, that none of them have any preference, and that all shall be valued anew in order to make them equal shares.
“ I would take Messers. Gilbeau, J. H. Kampman and P. H. Gallagher to make the division.
“(Signed) H. Grenet.
“ My last testament and my last will, outside of that which goes before, otherwise which I prove anew hereby:
“I desire, before making any division, there shall be withdrawn from what I shall possess at my death, either in properties ot merchandise, what is coming to my children from their share of their mother, either fifty thousand dollars (or ten thousand dollars apiece), which embraces the half of what I owzaed in money, obligations and railroad securities at the date of her death (or one hundred thousand dollars in money) not including my properties in San Antonio, their values (of one hundred thousand dollars) were deposited with Mess. Honoré Rousseau, 26 Rue Riches, in Paris.
“In case my sister, Mde. widow Gerard, should not serve as testamentary executrix, I appoint Mr. Joseph Dwyer, whom I invest with the same powers.
“San Antonio, 21st September, 1881.” H. Grenet.
*564 The construction of the court below was evidently based upon article five, of this instrument, since there is no other provision ■in the will or codicils, that seemingly places any restrictions Upon the powers of the executrix. The judge evidently considered, that the words “ I will that my mercantile affairs shall fee immediately brought to a stop ” was a direction to the executrix and a limitation upon her power to continue the business. But in this view we do not concur. The language of the first sentence is somewhat peculiar, and if it stood alone it would be equivocal. To bring to a stop may mean a temporary or a permanent cessation. But it seems to us, that if the testator had intended to direct that his executrix should not continue his mercantile business, he would have expressed that intention clearly and would have indicated his wishes as to the manner in which the stock on hand should be disposed of, that is to say, either by public or private sale, in bulk or in parcels, as seemed to him most beneficial to his estate.
The third and fourth articles place no limitations upon the power of the executrix. She is relieved from giving bond, and is only required to probate the will and file an inventory, which were duties of which she could not be relieved under the statute. It seems to us that these articles alone defined the scope of her powers, and that the testator, having fixed her authority, considered that a considerable period might elapse between the . time when his death should be made known, and that at which his executrix should arrive from France to take charge of her trust; and determined to direct that the store house should be closed for that period only. Accordingly, immediately after expressing his wish that his business should be closed and his store house shut, he proceeds to designate his friend Mr. Fretelliere for the performance of this duty. The whole of this last article, taken together, indicates very clearly, we think, that it was applicable only to the time intervening between the death of the testator and the .arrival or, at the farthest, the qualification of the executrix; and that the duties there enjoined, were devolved solely upon the friend, who was named to take charge of the store house, the goods and the books relating to the testator's commercial business. Hence, we conclude that the directions in article five were provisional, and were not to extend beyond the time when the executrix should undertake the direction of the testator’s affairs. The will is dated in 1869, and by the second codicil, made in 1881, J. E. Dwyer is appointed exe *565 cutor, in case the executrix nominated in the will shall decline to act; and is invested with the same powers as the executrix •originally named.
The error of the court in construing the will had a most important bearing upon the disposition of the case. If the will had directed that the mercantile business should be discontinued, then the action of the executor in carrying it on was in violation of law, and his estate would have been properly chargeable for any loss that resulted from its continuance. But, according to our construction, the executor had the power of administering the estate free from the control of the county court, without other enlargement or any limitation of his powers, except such as were thrown around him by the statute. It can not be dotibted that such an executor, called in our State, for the sake of convenience, an independent executor, has the power to do, without the order of the county court, every act which an executor administering an estate under the control of the court, can do with such order. In other words, when not restrained by the will itself, he can certainly exercise all the powers given by the statute to any other executor or administrator.
Article 1931 of the Revised Statutes clearly contemplates, that it may become the duty of an executor to carry on a plantation, manufactory or business left by his testator, when the disposition thereof is not specially directed by the will. This must be construed to embrace a mercantile business. With the exception of farming, there being more persons engaged in commercial pursuits, than in any other in our State, we must conclude that if the Legislature had intended to except such business from the operation of this statute, that the intention would have been made manifest by express words. Such pursuits being hazardous at best, it may seem impolitic to include them in this provision of the law; but this does not authorize us by construction to take from a statute that which is plainly included by its terms. We think, therefore, that it was the duty of the executor to determine from the lights before him, whether or not it was beneficial to the estate of his testator to continue the business; and that having decided to carry it on, his estate can not be held chargeable for any loss that occurred therefrom, unless it should appear that under all the circumstances- he failed to exercise a reasonable discretion in the premises.
The duty of the executor in such a case being controlled by statute in this State, the common law authorities which lay *566 ■down a different rule of liability are not applicable to the case 1 before us. (Schouler’s Executors, sec. 325, et seq.)
, 16 follows, from what we have said, that the court erred in the fifth paragraph of the charge, and that for this error the judgment must be reversed.
ít is complained also that the court erred in giving the jury a 'general charge authorizing them to return a general verdict, and ¡sil submitting to them at the same time special issues. The jury returned a general verdict, and also special findings in response to the special issues submitted. This we think at least irregular; but whether it would in any case be ground for reversal, we ,n@8d not now decide. Article 1328 of the Revised Statutes reads ►as follows: “ The verdict of a jury is either general or special.” Article 1333 reads: “The jury shall render a general or special verdict, as may be directed by the court,” etc. It is clear that either the one or the other may be rendered; but we think the 'statute does not contemplate that the jury shall return both. In this case there is a general verdict for plaintiff for five thousand, two hundred and ninety dollars and thirty cents, and also a verdict upon special issues, and upon these the court gave judgment against the defendant, the bank, for the five thousand two hundred and ninety dollars and thirty cents; and judgment in favor of plaintiff against intervenor for the sum .of thirtyItwo thousand nine hundred and eighty dollars and forty-seven ¡cents. ‘ This practice is not authorized by statute, and is calculated to lead to confusion, and it is not clear to us that the jury were not confused in this case.
But it is also contended on behalf of appellants, that the executor was entitled to commissions on money expended by him in the purchase of goods for carrying on the business of the estate, and also upon money received from the sale ■of the goods so bought. We think, however, that the statute 'allowing commissions is not applicable to such a case. Such 'a compensation for buying and selling goods would not only ibe unreasonable in itself, but would impose such an expense Upon the transactions as to be ruinous to any business. When 'the legislature provided that a commercial business might ¡be continued by an executor or administrator, it did not contemliplate that he 'should secure his compensation through a commistsion upon the purchase and sale of new goods, but by a reasonable allowance for the time and labor bestowed by him upon this business, as is provided by statute for other such extraor *567 dinary services. The ruling of the court below was in accordance with this view; and in so ruling the court was correct. The executor was entitled to five per cent upon the amount realized' from the goods on hand when he took charge of the estate, and this was allowed him. He was also entitled to a reasonable compensation -for his services in conducting the business in addition to his ordinary commissions as executor.
Opinion delivered June 24, 1887.
The other errors assigned are not likely to arise upon another trial and need not be discussed; but for the error in the charge of the court which has been pointed out, the judgment will be reversed and the case remanded.

Reversed and remanded.