## DOWNS v. GOODWIN, Special County Judge.*
### (No. 1203.)

(Court of Civil Appeals of Texas. Beaumont.
April 2, 1925. Rehearing Denied
April 15, 1925.)

Judges ⬤➡22(1)—County judge held not enti-
tled to commission on cash coming into hands
of administrator while carrying on unfilled
road construction contracts of decedent.

Under Rev. St. 1911, art. 3850, allowing
county judges a commission on actual cash
receipts of executors or administrators on final
settlement of account, county judge *held* not en-
titled to commission on cash coming into hands
of administrator while carrying on unfilled road
construction contracts of decedent, which cash
he was required immediately to pay out in
carrying on such contracts.

Appeal from District Court, San Augustine
County: V. H. Stark, Judge.

Motion by C. C. Goodwin, Special County
Judge, to tax costs accruing in administra-
tion of the estate of H. F. Bland, deceased,
against E. D. Downs, administrator. Judg-
ment for movant in county court was af-
firmed on appeal to the district court, and
administrator appeals. Reformed and af-
firmed. .

S. W. Blount, of Nacogdoches, and W. T.
Davis, of San Augustine, for appellant.

Ramsey, Minton & Lewis, of San Augustine,
for appellee.

HIGHTOWER, C. J. This controversy
grows out of the following facts:

H. F. Bland, during his lifetime, was a
road building contractor, and prior to his
death, which occurred in the early part of
March, 1921, had entered into contracts with
Jasper, Nacogdoches, and San Augustine
counties to build and construct roads and
highways in those counties, and had execut-
ed bond for the performance of such con-
tracts. When Bland died, these contracts
had not been fully performed; but, on the
contrary, the work to be done under them be-
ing largely unfinished.

Shortly after Bland's death, E. D. Downs,
appellant, was appointed temporary admin-
istrator of his estate by the probate court
of San Augustine county. The regular coun-
ty judge was disqualified to act in the mat-
ter, and Hon. C. C. Goodwin was made spe-
cial county judge, and he duly qualified and
appointed Downs, and shortly thereafter
made the appointment permanent. Judge
Goodwin continued to act as special county
judge in all matters pertaining to the ad-
ministration of Bland's estate until some time
in January, 1923, when a new regular coun-
ty judge was elected and qualified.

When Downs became administrator of
Bland's estate, he decided that it would be
for the best interests of the estate to carry
out and complete the contracts made be-
tween Bland and the counties named for
the building of the roads called for by the
contracts, and he applied to Judge Goodwin
for permission to carry out such contracts,
and the judge entered an order granting him
that permission, and the administrator en-
tered upon the performance of the contracts
and carried the roadwork to completion.

During the time that the administrator
was carrying the roadwork to completion, a
large amount of money was paid to him by
the several counties upon estimates of the
amount of work completed by him, as the
work progressed, and as the money so paid
to him was received, he paid it out for labor,
material, and other necessary expenses in-
curred in completing and carrying out the
several contracts.

On June 9, 1922, the administrator filed
his first annual report, and this showed that
the administrator had received in actual cash
from all sources the total sum of $367,177.60.
The report also showed in full how this mon-
ey was disbursed and paid out by the ad-
ministrator in carrying out the roadwork,
and the payment of debts against the estate.
The report is quite lengthy and in great de-
tail, and it would serve no useful purpose to
mention any of such details, since there is
no question by either party here touching
the correctness of the report in any respect.
The report further showed that the admin-
istrator had on hand at that date in actual
cash, which was the proceeds of bonds ac-
quired in the road work, $20,092.06. This
report was duly approved by Judge Goodwin
and ordered filed.

Subsequent to the filing and approval of
the administrator's report, he paid Judge
Goodwin $500, that amount being one-half
of 1 per cent. of $100,000, but declined to
pay to Judge Goodwin any further sum as
commissions claimed by Judge Goodwin to
have been earned by him as special county
judge in the matter of the Bland estate.

This litigation was initiated by Judge
Goodwin's filing a motion in the county court
of San Augustine county to tax the costs
accruing in the administration of the Bland
estate while he was acting as special county
judge, and directing its administration,
claiming in the motion that the total amount
of the commissions to which he was entitled
as county judge in the matter of the es-
tate was $1,835.88, but that he had only been
paid by the administrator and had only re-
ceived the sum of $500, and that therefore
he was entitled to the further sum of $1,335.-
88 as commissions earned by him while act-
ing as special county judge in matters per-
taining to the Bland estate. He further
alleged in the motion that the administrator,
Downs, had on hand sufficient funds to pay

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted June 3, 1925.

him the balance of the commission claimed by him, after all preferred claims and debts against the estate had been discharged, and his prayer was for an order directing the administrator to pay to him, out of the funds in his hands, the sum of $1,335.88.

Upon hearing of the motion in the county court, an order was made by the court allowing Judge Goodwin the amount of $1,335.-88 as commissions claimed by him, and directing the administrator*to pay the same. From that judgment the administrator appealed to the district court of San Augustine county, and upon a trial in that court the same order and judgment was entered in favor of Judge Goodwin, and the administrator, Downs, has prosecuted this appeal.

Whether or not the trial court's judgment was correct depends upon a proper construction of article 3850, Revised Statutes of 1911. The article reads as follows:

"There shall also be allowed the county judge a commission of one-half of one per cent. upon the actual cash receipts of each executor, administrator or guardian, upon the approval of the exhibits and the final settlement of the account of such executor, administrator or guardian, but no more than one such commission shall be charged on any amount received by any such executor, administrator or guardian."

It is the appellee's contention that under the statute quoted he was entitled to commissions as special county judge in the matter of the Bland estate to a sum of money equal to one-half of 1 per cent. of $367,177.-60, for the reason that the annual report of the administrator filed June 9, 1922, and which was duly approved by appellee, showed that that amount of actual cash had been received by the administrator, acting under orders from appellee, as special county judge, and that since only $500 had been paid to him by the administrator, he was entitled to the further sum of $1,335.88, the amount awarded him by the trial court's judgment. Counsel for the appellee argue that the statute (article 3850) is so plain and definite that it is not susceptible of and requires no construction, and that since the report of the administrator shows without contradiction that $367,177.60 was received by him in actual cash while acting as administrator under appellee, as special county judge, the trial court was bound by the statute to award him a recovery for the balance of the commissions claimed by him.

It is admitted by appellant that $100,000, of the $367,177.60 shown by the administrator's report as having been received by him, came from sources other than the roadwork carried on by the administrator, and that to the extent of $100,000 of the amount shown in that report as having been received by the administrator, appellee was entitled to commissions thereon of one-half of 1 per cent., amounting to $500, and that that

amount was properly paid to appellee by the administrator. Appellant contends, however, that appellee was not entitled, under article 3850, to recover any amount as commissions for his services as special county judge on money that came into the administrator's hands from the roadwork carried on by him. In this connection, counsel for appellant contend that the opinion of our Supreme Court in Dwyer v. Kalteyer, 68 Tex. 554, 5 S. W. 75, is decisive of the point in appellant's favor. We have given the opinion in the Dwyer Case careful consideration, but have reached the conclusion that the opinion in that case is not squarely in point here, although some of the reasoning for the conclusion there reached supports appellant's contention here. The court in the Dwyer Case had under construction article 3621, which relates to commissions allowed executors and administrators, and makes no mention of commissions allowed county judges in probate matters. The Supreme Court held, in the Dwyer Case, that an executor, who carried on a mercantile business of a decedent for a while after the latter's death, was not entitled to commissions under article 3621 for moneys expended by him in the purchase of new merchandise and the proceeds received by him for the sale of such new merchandise. Judge Gaines, speaking for the Supreme Court in that case, said, in substance, that to allow an executor or administrator the commissions fixed by article 3621 for such services would be wholly unreasonable and would probably be ruinous to the estate of the decedent, and reached the conclusion that the Legislature never intended to allow such commissions as fixed by article 3621 for such services. He pointed out, however, that for such service as was performed by the executor in that case, he was entitled to reasonable compensation under another article of the statute.

Counsel for appellee contends that the opinion of the Supreme Court in the Dwyer Case has no application whatever by analogy or otherwise to the question here presented, and argues that the Supreme Court in the Dwyer Case denied the commissions there claimed by the executor solely on the ground that the executor's compensation for the services there performed was fixed by another statute. We do not agree with counsel for appellee that the contention of the executor in the Dwyer Case for commissions under article 3621 was denied for the sole reason that compensation for the services there performed by the executor was fixed by another statute. On the contrary, the reasoning of the court shows that the Supreme Court would not have allowed commissions there claimed under article 3621, even if there had been no other statute allowing reasonable compensation for such services, because the court stated that such an allowance would be so unreasonable

and ruinous, perhaps, that it could not be contemplated that the Legislature intended the allowance of such commissions as was there claimed.

We do not find where any court in this state has ever construed article 3850, which is the only statute of this state that fixes the commission of county judges in probate matters, with the exception of the case of Grice v. Cooley, County Judge (Tex. Civ. App.) 179 S. W. 1098, and the only question that was before the court in that case was whether the county judge might collect for commissions under article 3850 upon the administrator's annual report, or whether he would have to wait for his commissions until the administrator made his final report. The court reached the conclusion in that case that the county judge was entitled to his commissions under article 3850 upon the administrator's annual report, as well as upon the final report; but the question before us was not touched upon in that case. Therefore, in view of the fact that we have no precedent in the way of authority in this state, we must construe article 3850 in disposing of this controversy.

The evidence in this case shows without controversy that at the date of Bland's death, he was actively engaged in the building and construction of roads and highways in the counties above named, and was under bond to carry out his contracts with those counties. It is further shown that Bland had outstanding against him a large amount of indebtedness, and it was necessary for him to make arrangements with a bank to procure the means as they would be needed from time to time in carrying out his road contracts. There is nothing in the record to show that the road contracts themselves were considered to be of any particular value at the time of Bland's death, and the appraisers of his estate did not appraise these contracts at all, for the reason, perhaps, that their value, if any, was considered only problematical; but being under bond with the several counties to carry out the contracts as made and as partly performed by Bland, the administrator thought best, and the county judge agreed with him, to carry out, if he could, Bland's road building contracts with the several counties, and undertook to do so, and did do so, and as fast as he would be paid money by the several counties for the work done by him on estimates of the work under the contracts, he was compelled to pay out the money so received by him for labor and material and other expenses incurred in the work, and in this way it might be said the money was put back into the work as fast as it came into the hands of the administrator. Now the precise question before us is this: Did the Legislature, when it enacted article 3850, contemplate or intend that the county judge

should receive a commission of one-half of 1 per cent. on all cash that actually comes into the hands of an administrator while carrying out a business contract of decedent, such as the contracts Bland had made with the several counties named for the construction of roads?

We have reached the conclusion that the Legislature did not so intend. As said by Judge Gaines in the Dwyer Case, to give the statute such a construction would seem unreasonable and might result in ruin of the decedent's estate. We are rather inclined to think that it was the intention of the Legislature, in enacting article 3850, that the county judge should be paid a commission of one-half of 1 per cent. on all actual cash received by the administrator while acting as such from the sale of property owned by decedent at the time of his death, or from the collection of debts belonging to the estate at the time of his death, or on cash representing rentals, etc., of decedent's property in the hands of the administrator, or on actual cash remaining in the hands of the administrator and coming from the prosecution of the decedent's business. It seems to us unreasonable to conclude that the Legislature intended that a county judge might authorize an administrator to carry on an extensive business of a decedent for a great length of time after his death, and receive a commission on all cash actually coming into the hands of the administrator, by piecemeal or otherwise, regardless of how long the money was in the hands of the administrator or how it was disbursed. As shown in this case, the cash that came into the hands of the administrator upon which the appellee claims commissions was put right back into the road building work that the administrator was doing in carrying out the decedent's contracts, and while such money was in a sense "cash actually received by the administrator," it was not, in our opinion, cash actually received by him as contemplated by article 3850. The administrator was bound, in order to carry on the work, to put the money right back into the work, and it seems to us that the money he received in carrying out the work, under these circumstances, can no more reasonably be said to be cash actually received by him than it could be said that money borrowed by him under orders of the county judge would be cash actually received by him as administrator. And surely a Legislature could not be expected to intend that a county judge might authorize an administrator to borrow large sums of cash, upon which the county judge should receive a commission. Such a temptation would be too great for weak humanity.

It seems to be the general rule in most jurisdictions that an administrator carrying on the business of his decedent is not entitled to commissions on the gross receipts realized,

or the necessary disbursements made by him while conducting such business, but the proper compensation for such services in most jurisdictions is a reasonable allowance for the time and labor bestowed by the administrator in carrying on such business. 24 C. J. § 2410. It has also been held in some jurisdictions that an administrator is not entitled to commissions on money borrowed by him as such administrator and which does not go to increase the corpus of the estate. The same reason, we think, which denies to an administrator the right to statutory commissions on money borrowed by him for use of the estate and for services performed by him not usual in the ordinary administration, also denies to a county judge in this state commissions under article 3850 on the money that came into the hands of the administrator in this case, but was immediately paid out by him in carrying on the roadwork contracted for by the decedent as permitted by the county judge, the appellee.

In view of the fact that the administrator's report above referred to showed that he had on hand at the date thereof in actual cash $20,092.06 belonging to the estate of Bland, we think that the court should have allowed appellee a commission of one-half of 1 per cent. on that amount, with interest on that amount from the 9th day of June, 1922, until paid, in addition to the $500 which, admittedly, he had already received, and such will be the judgment of this court.

It results from what we have said that this court is of the opinion that the trial court's judgment in this case is excessive by $1,235.42, and we therefore reform the trial court's judgment by deducting from the amount allowed him, which was $1,335.88, the sum of $1,235.42, and as reformed we affirm it for $100.46.