**GOODWIN, Special County Judge, v. DOWNS.**
**(No. 590–4415.)**

(Commission of Appeals of Texas, Section B. Feb. 10, 1926.)

Judges ☞22(1)—County judge held entitled to commission on cash coming into hands of administrator, while carrying out decedent's unfilled contract; time and manner of distribution being immaterial (Rev. St. 1911, art. 3850).

Under Rev. St. 1911, art. 3850, allowing county judges a commission on actual cash receipts of executors and administrators on final account, county judge *held* entitled to commission on actual cash receipts by administrator while carrying on unfilled road construction contract of decedent; time and manner of distribution thereof not affecting his fees, since he received no compensation on distributions.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Motion by C. C. Goodwin, Special County Judge, to tax costs accruing in administration of the estate of H. F. Bland, deceased, against E. D. Downs, administrator. Judgment for movant in the county court was affirmed on appeal to the district court, but on appeal to the Court of Civil Appeals was reformed and affirmed (271 S. W. 414), and movant brings error. Judgment of Court of Civil Appeals reversed, and judgment of the district court affirmed.

Ramsey & Minton, of Hemphill, for plaintiff in error.

S. W. Blount, of Nacogdoches, and J. M. Sanders, of Center, for defendant in error.

POWELL, P. J. H. F. Bland, a road building contractor, died in the early part of March, 1921. Shortly after his death, E. D. Downs was appointed temporary administrator of his estate by Hon. C. C. Goodwin, special county judge; the regular judge being disqualified. Later, Downs was made permanent administrator of this estate. Judge Goodwin continued to act as special judge in supervising this administration until some time in January, 1923, when a new regular judge, not disqualified in this case, took office.

During all the time aforesaid, Judge Goodwin performed all necessary duties in the administration of this estate and they were quite varied. At the time of his death, Bland had road building contracts, largely uncompleted, with Jasper, San Augustine, and Nacogdoches counties. He was under bond to complete the contracts. The question arose, after his death, whether it would be best for his estate to execute the contracts, to a profit if possible, or repudiate them and suffer the penalty. The court ordered the contracts executed. The administrator carried on the

work. Upon the completion thereof, his report showed actual cash receipts of $367,177.60. The administrator testified that no cash items were duplicated in his account. The sum just stated was his net cash including considerable profits from the road contracts.

The county judge asked for $1,835.88 for his commissions, that being one-half of 1 per cent. of the aforesaid actual cash receipts by the administrator. The latter refused to pay the claim, agreeing to pay only $500; that being the commission on $100,000 of aforesaid receipts which came from sources other than the road contracts. The judge accepted the $500 in part payment and sued in the county court for the balance of $1,335.88. The regular county judge, then in office, allowed the claim. On appeal by the administrator, the district court did likewise. The administrator then appealed to the Court of Civil Appeals and that court rendered judgment eliminating all of the $1,335.88, except $100.46; that being the commission on $20,092.06 which the administrator still had on hand after the road contracts were completed. It seems that this cash balance was in the nature of profits from the road contracts. The opinion of the Court of Civil Appeals in this case is reported in 271 S. W. 414. The administrator did not object to this slight recovery allowed by the Court of Civil Appeals, but the special county judge applied for a writ of error, which was granted by the Supreme Court.

The first ·assignment in the application presents the controlling question in this case: Did the district court correctly allow the county judge his fees in the sum of $1,335.88? The statute, article 3850, Revised Civil Statutes of 1911, governs the matter. It reads as follows:

"There shall also be allowed the county judge a commission of one-half of one per cent. upon the actual cash receipts of each executor, administrator or guardian, upon the approval of the exhibits and the final settlement of the account of such executor, administrator or guardian, but no more than one such commission shall be charged on any amount received by any such executor, administrator or guardian."

This article has been the law, without change, for 50 years. It is carried forward in the Revised Statutes of 1925. Strange as it may seem, the question before us has never heretofore been before the appellate courts. The Court of Civil Appeals so states, and we have so found the fact to be.

The Court of Civil Appeals says, therefore, that it feels free to place its own construction on the statute involved. It construes the article in this language:

"We are rather inclined to think that it was the intention of the Legislature, in enacting article 3850, that the county judge should be paid a commission of one-half of one per cent. on all actual cash received by the administrator while acting as such from the sale of property owned

by decedent at the time of his death, or from the collection of debts belonging to the estate at the time of his death, or on cash representing rentals, etc., of decedent's property in the hands of the administrator, or on actual cash remaining in the hands of the administrator and coming from the prosecution of the decedent's business."

The court seems to lay much stress on the fact that as soon, as the counties paid the administrator for the road work, the latter had to pay it out in expenses connected with the construction of the roads. We do not think the time or manner of its disbursement has anything to do with the fees of the county judge, since he, unlike executors and administrators, receives no compensation on disbursements. Nor can we agree that it would be unreasonable to allow Judge Goodwin's claim on the theory that it might ruin the decedent's estate to do so. One-half of 1 per cent. of the cash receipts of an administrator is not, in our judgment, reasonably calculated to ruin any estate. It certainly would not have ruined this estate. It seems to us that the very small commission allowed county judges is but a trifle, after all. It is so much less than executors and administrators receive. Of course, the duties of the latter require very much more time.

We are clearly of the view that the trial court entered the correct judgment in this case. The county judge has only one way to receive any compensation for his supervision of an administration. His responsibility is great. He must study the reports and approve the accounts, including receipts and disbursements. The Legislature fixed this definite method of computing his fees. It will not be assumed that the Legislature intended to do an unreasonable or absurd thing. But we see no reason to amend or limit this article upon either of such hypotheses. There is nothing in the history of this act which shows that the Legislature had any exception in mind. We are not called upon to say that no exception by construction will ever be read into this article by the courts. We do not say so. But we do say that the courts found it was to the best interest of the estate in this case, in winding it up, to execute binding. contracts which the deceased had already made in his lifetime. In doing. so, cash receipts naturally came into the hands of the administrator.

We are not presented here with an administration where new contracts are made after the death of the deceased. If Downs had decided to continue the business indefinitely, under new contracts, a different situation might have arisen. We express no opinion on that question. Even then, as we see it, those interested in the assets of an estate could close the same before it could be consumed in court costs should the interested parties think it to their best interest to do so.

There is one interesting decision by our Su-

preme Court, decided about three years ago. By analogy, it seems to us to. govern this case. It certainly is an answer to the reasoning of the Court of Civil Appeals in the instant case. We refer to the case of Von Koenneritz v. Henry Ziller, 245 S. W. 423, 112 Tex. 126. In that case, the contest was over the fees of an executor. His fees, in part, like those of the county judge, are dependent upon cash actually received. In this Ziller Case, one Henrietta Blau died, leaving a will to be executed by Ziller and Von Koenneritz. The latter was also residuary legatee of the estate. The estate consisted of $376.42 cash and notes aggregating the face value of some $10,310. Von Koenneritz had all of this property in his hands, managing the same, at the time of the testator's death. After the will was probated, he refused to permit his coexecutor, Ziller, to have anything to do with the estate. But there were legacies of about $4,000 to be paid under the terms of the will. Von Koenneritz, on his own name and by using his own private collateral, borrowed $3,500,. which, with $592.42, also advanced by himself personally, went to the legatees. The money was placed to the credit of an attorney for the executors. This attorney paid it out on checks he drew himself. However, the attorney took receipts issued to both of the executors. Ziller, upon these facts, claimed his commission on this borrowed money. The trial court allowed it. The Court of Civil Appeals did so. But, on rehearing, Chief Justice Key, for his court, certified this question:

"In view of the novelty as well as of the importance of the question here certified, and in view of the further fact that appellant cannot prosecute a writ of error herein, we deem it proper to certify to your honorable court the following question which is presented by pleadings and the evidence herein, and is material to a proper disposition hereof, to wit: Should defendant in error have been allowed commissions on the whole of the $4,936.42, or only on the $844, shown in the foregoing statements of facts? In other words, should the $3,500 borrowed by plaintiff in error, and the $592.42 advanced by him, all of which was paid out on legacies and debts of the estate, be treated as money received by the executors?"

The question was answered in the affirmative in an opinion by this section of the Commission of Appeals, written by Judge Hamilton. The opinion and answer were adopted by the Supreme Court. It was held that Ziller was equally responsible for the money, regardless of its source. The responsibility attaching, he should have remuneration.

If money borrowed in that way is cash actually received, we see no reason why cash actually received, as in the case at bar, is not also within the statute. This cash was made by the administrator and not borrowed. In both cases, there was merely being executed,

in the best way possible, the obligations and desires of the deceased. ' No new business was being undertaken. In the instant case, the county judge was just as responsible for the road money receipts as he was for the $100,000 from other sources. He was required to be equally careful in supervising its disposition and disbursement. We see no reason · for not allowing this county judge what the statute in clear and unmistakable language gives him. We do not believe it is in any wise unreasonable.

In view of what·we have said, we recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.