**KIRBY v. AMERICAN STATE BANK OF AMARILLO. (No. 10160.)**

Court of Civil Appeals of Texas. Dallas. March 3, 1928.

Rehearing Denied March 31, 1928.

**1. Bills and notes ⊜⟼256—Arrangement to defer placing notes with attorney for collection held not agreement to extend time for payment releasing indorser.**

Holder's agreement to defer, for period of 48 hours, the placing of notes in hands of attorney for collection, *held* not an agreement, made without indorser's consent, to extension of time for payment, so as to release indorser from his obligation, where notes could have been paid at any time within such 48-hour period and the running of interest would thereby have been stopped, and where there was no showing that the indorser's position had in any way been changed by such promise as to deferment.

**2. Principal and surety ⊜⟼97—Valid agreement between creditor and principal, changing surety's position for worse, discharges surety's liability.**

Since the obligation of a surety is strictly limited to the terms of his contract, any valid agreement between creditor and principal by which surety's position is changed for the worse discharges his liability.

**3. Bills and notes ⊜⟼139(3), 256—Renewal without indorser's consent of note to definite date, with agreement to pay interest thereto, is supported by consideration, and releases indorser.**

It is a well-recognized rule of law that a contract of renewal of note to a definite date,

coupled with an agreement, express or implied, to pay interest to such definite date, is supported by a consideration, is binding on holder, and releases indorser; he not being a party to such extension agreement.

**4. Trial ⬤⟾350(8)—In submitting cause on special issues, court need submit to jury only controverted issues (Rev. St. 1925, art. 2189).**

On the submission of cause to jury on special issues, as provided by Rev. St. 1925, art. 2189, it is only necessary, in view of article 2202, §§ 2, 3, and 5, that the court submit controverted issues.

**5. Trial ⬤⟾215—Court has authority to submit cause only under general charge or on special issues (Rev. St. 1925, art. 2189).**

Under Rev. St. 1925, art. 2189, and in view of article 2202, §§ 2, 3, and 5, the court has authority to submit a cause only under a general charge or on special issues.

**6. Appeal and error ⬤⟾1062(1)—Submitting cause under both general charge and on special issues held harmless error, where special issues were independent of general charge relative to defendant's liability on notes and were uncontroverted (Rev. St. 1925, art. 2189, and art. 2202, §§ 2, 3, 5).**

In suit on notes, wherein defense was discharge of indorser by extension of note without his consent, court submitting cause to jury under both general charge and on special issues *held* harmless error, under Rev. St. 1925, art. 2189, and article 2202, §§ 2, 3, and 5, where special issues were entirely independent of general charge relative to question of defendant's liability on the notes, and were uncontroverted.

Appeal from District Court, Dallas County; Claude C. McCallum, Judge.

Suit by the American State Bank of Amarillo against John H. Kirby and another. From the judgment, named defendant appeals. Affirmed.

Bailey & Bailey, of Dallas, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, for appellee.

VAUGHAN, J. On September 28, 1926, appellee, the American State Bank of Amarillo, filed its suit against one O. S. Carlton and appellant, John H. Kirby, as defendants, on two promissory notes, both executed by said Carlton, payable to himself, and indorsed by him and appellant Kirby. One note was in the sum of $10,000 and one in the sum of $5,000, both executed on the 15th day of June, 1926, payable 90 days after date, with interest at the rate of 7 per cent. per annum from maturity until paid, and providing for the usual 10 per cent. attorney's fees. Appellee alleged that both of said notes were past due and unpaid; that demand had been made of the principal, O. S. Carlton, and the indorser, appellant, and that the notes had been placed with attorneys for collection, and the attorney's fees stipulated for had accrued thereon.

Appellant answered by general demurrer and general denial, and further alleged a binding agreement on the part of appellee with the said Carlton, or his agent, for an extension of time for the payment of said notes without appellant's knowledge or consent, and without expressly reserving any right of recourse against himself. Appellant further denied the reasonableness of the 10 per cent. attorney's fees. After the evidence had been adduced, appellant moved the court for an instructed verdict in his behalf on the ground that the undisputed evidence established a binding agreement for an extension of the time of maturity or collection of the notes without his knowledge or consent, and without expressly reserving rights against himself. This motion was overruled, and the court instructed the jury to return a verdict in favor of appellee against the defendant O. S. Carlton, as principal, and appellant, as surety, jointly and severally for the sum of $15,650.46, the amount of principal and interest due upon the two notes sued upon to that date, and, in addition, submitted the following special issues:

"No. 1. Did the North Texas National Bank place the notes sued on herein in the hands of an attorney for collection or suit before plaintiff bank received request from the defendant Sibley on September 27, 1926, not to place said notes in the hands of an attorney until noon of September 20, 1926?

"No. 2. What amount in dollars would be a reasonable compensation for the services of plaintiff's attorney in this suit?"

In connection with special issue No. 2, the following charge was given:

"You are instructed that, while the notes introduced in evidence contain a stipulation to pay 10 per cent. attorney fees, such stipulation is but a contract of indemnity, and is in legal effect a contract to pay said fees only, if it is a reasonable fee."

No. 1 was answered "Yes," and No. 2, "$1,565.04."

Judgment was entered on said verdict in the sum of $17,215.50, with interest thereon at the rate of 7 per cent. from the 28th day of April, 1927, together with all costs.

From this judgment appellant only appealed, and presents in support of his appeal the following propositions:

"(a) Where the uncontradicted evidence affirmatively establishes that an agreement was made by the holder of the promissory note with the maker thereof, or with his agent, to forbear for a valuable consideration and a day certain the time of collection or payment of the obligation, and such agreement is made without the knowledge, consent, or assent of the indorser, and without expressly reserving the holder's right against such indorser, the indors-

er is relieved of liability because of such indorsement.

"(b) There is no authority under section 2202 of Vernon's Annotated Civil Statutes 1925 for submission of a general charge together with special issues. The statute provides that the verdict shall be either general or special."

Appellee, in due course of trade, and for value, acquired as an innocent purchaser the two notes sued upon, and, as holder, instituted its suit thereon on the 28th day of September, 1926, against the defendant O. S. Carlton, as maker, and appellant, Kirby, as indorser. On September 27, 1926, one S. W. Sibley, acting as agent for defendant Carlton, wired appellee in reference to said notes as follows:

"Instruct North Texas National Bank by wire not to place Carlton notes in hands of attorney. Arrangements being made to pay."

To this communication appellee, acting through its president, J. H. Paul, replied by letter of date September 27, 1926, as follows:

"We have your wire under this date which reads as follows: [The above telegraphic communication being here quoted.] We are complying with your request and wiring North Texas National Bank to-day to delay placing these notes in the hands of an attorney until Wednesday noon, but will instruct them by letter to-day, if not paid by that date, to place in hands of an attorney and have suit filed. We trust that these notes will be taken care of by Wednesday noon, so that it will not be necessary to have them placed in the hands of an attorney. We have been out the expense of three telegrams on these items, which we feel should be paid for our account at North Texas at the time of payment of notes."

The above wire and letter represented the entire agreement which appellee had with said Sibley for the benefit of defendant, Carlton, in reference to the collection of said notes. Said Sibley testified that, as the agent for defendant Carlton, he received said letter, agreed to its terms, and that appellant knew nothing of said agreement and did not consent thereto. The letter contained no express reservation of the rights of appellee against the appellant as indorser of said notes. The North Texas National Bank, as the agent of appellee, had received and held said notes for collection prior to the date of said wire. The jury found that said notes had been by appellee's said agent turned over to an attorney for collection before appellee received the wire from Sibley, and also that a reasonable attorney's fee for representing appellee in the suit was $1,565.04. We find that there was ample evidence to authorize such findings, and therefore adopt same as our findings of fact on the issues disposed of by same.

[1, 2] What agreement was consummated by the wire and letter, respectively, of date September 27, 1926? By the wire, appellee was requested to wire North Texas National

Bank not to place the notes in the hands of an attorney. The letter from appellee acceded to that request, and nothing more. Giving the language of the wire and letter full import according to its commonly accepted usage, we do not think that any other contractual relationship can be gathered therefrom than that appellee was requested to withhold the placing of said notes in the hands of an attorney. This appellee agreed to do until Wednesday at noon, viz. the 29th day of September, 1926. This did not embrace an extension of time within which payment could not be made or demanded, as the language of the request not to place in the hands of an attorney, and the language of the letter granting such request, clearly shows that appellee was urging the collection of the notes, the right still existing under such agreement, not only to receive, but to demand payment as against Carlton as maker and appellant as indorser of the notes. All of the rights theretofore existing in favor of appellant as indorser remained intact and undisturbed, viz. his right as such indorser at any time after the maturity of the notes to pay same and to proceed against the maker Carlton for indemnity. This right was not impaired, as appellee did not enter into a contract with the principal, Carlton, for an extension of the time of payment. We are not unmindful of the well-recognized rule of law that "the obligation of the surety is strictly limited to the terms of his contract, and any valid agreement between the creditor and the principal by which his position is changed for the worse, discharges his liability," as announced in Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128.

In what respect was appellee's position changed for the worse? Can it be said that such a change was wrought by the mere agreement not to place the notes in the hands of an attorney covering a period of about 48 hours, during which period of time the right and duty of the principal Carlton or of appellant as indorser to pay off and discharge the notes, remained the same as aforetime the making of said agreement? We think not. The obligation of Carlton as maker and of appellant as indorser to pay said notes continued to exist without the least suspension, and could have been asserted by them, respectively, at any time, notwithstanding the agreement not to place said notes in the hands of an attorney, as the right to collect the notes still abided unimpaired with appellee, the owner and holder. It is not only necessary that there be a promise to extend the time of payment, but the holder or creditor making such promise must be bound thereby—this because "if the creditor is not bound by his promise to extend, it is clear there is no release." Benson v. Phipps, supra. We have not been able to extract from

the agreement even an implied promise to extend the time of payment during the 48 hours that appellee agreed to withhold placing the notes in hands of an attorney; such implication not being necessary to carry out the contract entered into.

[3] The question under discussion is subject to another rule of decision which we think is determinative of same adversely to appellant. It is a well-recognized rule of law that a renewal to a definite date, coupled with an agreement, express or implied, to pay interest to such definite date, is supported by a consideration, and, if made with the maker, is binding on the holder and releases the indorser, he not being a party to such extension agreement, but not otherwise.

"Since a promise to do nothing more than one is already legally bound to do is no consideration for a promise given in return, there is no consideration for an extension of the time of payment of the bill or note which involves a promise to forbear where the only consideration is a debtor's promise to pay the debt at the extended time of payment, without anything more. * * * So, an agreement to pay a note which is already overdue creates no new liability on the promisor's part and is not a sufficient consideration." 8 C. J. 436.

In this case, appellee, the holder, demanded that the notes be paid "*by* that time" and not "*at* that time." The maker therefore had the right to pay before "that time" and stop interest. In other words, he was not bound by the extension. This being the case, certainly the holder was not bound. Austin Real Estate Co. v. Bahn, 87 Tex. 582, 30 S. W. 430, in which the Supreme Court used the following language:

"Here the creditor agrees to extend for one week, and the debtor agrees to pay within the week. He does not agree that he will not pay until the end of the week, or * * * in case he does pay, he will pay interest for the entire period of the extension. Hence there was no consideration for the promise of the creditor."

Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605, in which it was said:

"If by the terms of such agreement it should bind only the creditor to forbear, but allow the debtor to discharge the debt at any time and stop the running of interest, the agreement is without consideration."

Said proposition is therefore overruled.

[4, 5] By the provisions of article 2189, R. C. S. 1925, the trial court was authorized to submit the cause upon special issues without or upon request of either party, and in doing so was required to distinctly and separately present all issues raised by the pleadings and the evidence in the case, and the jury was required to answer each issue submitted separately. By article 2202, R. C. S. 1925, a verdict is defined to be "a written declaration by a jury of its decision of the issues submitted to them in the case" and is required

to "comprehend the whole or all the issues submitted," and by sections 2 and 3 of said article the verdict is required to be either general or special, and by section 5 thereof a special verdict is defined to be "one wherein the jury finds the facts only on issues made up and submitted to them under the direction of the court." On the submission of a cause on special issues, it is only necessary that the court submit to the jury controverted issues for decision. However, the law applicable to and governing the trial of causes contains no provision for the submission of a case partly on a general charge and partly on special issues. This excludes the idea that a cause may be determined partly on a general verdict and partly on a special verdict, as a court has only the authority to submit a cause under a general charge or upon special issues. That the trial court transgressed the provisions of said articles 2189 and 2202, supra, in the submission of this cause, there can be no doubt. If this was material error, this cause must be reversed. Under the undisputed proof, appellee was entitled to recover the principal sum of $15,000 and the sum of $650.46 as interest thereon at the date the verdict returned was instructed, aggregating $15,650.46, being the amount for which appellee was entitled to recover judgment on the uncontroverted facts; therefore no other ascertainment could have been reached as to the amount appellee was entitled to recover, whether that feature of the cause had been submitted to the jury by special issue or the court had determined the amount of such liability as an uncontroverted issue, and made findings of fact in support thereof in accordance with the holding in the case of American Surety Co. v. Hill County et al. (Tex. Civ. App.) 254 S. W. 241. We do not think that it is contemplated by the statute providing for the submission of causes on special issues that an independent uncontroverted fact should be submitted to a jury for decision. American Surety Co. v. Hill County et al., supra.

[6] The special issues submitted were entirely independent of the question of the liability of defendant Carlton and appellant for the payment of the principal and interest due on the notes. The only connection between the amount of principal and interest due and said special issues was that, in arriving at what would be a reasonable sum to be paid as attorney's fees, the amount of the indebtedness represented by the principal and interest should be taken into account, especially in view of the fact that the notes provided for the payment of 10 per cent. of the amount of the principal and interest due on said notes as attorney's fees. Therefore the submission as made of this cause was not calculated to confuse the jury, and certainly not to lead them into error in arriving at a decision of said issues. Therefore said submission was

only harmless error. Dwyer v. Kalteyer, 68 Tex. 554, 564, 5 S. W. 75. We do not think this sufficient-ground for reversal. However, in the submission of causes, this is a practice that should not be indulged in. Courts and attorneys should adhere to the plain requirements of the law so as to avoid injecting into a cause unnecessarily a question freighted with danger. In other words, the utmost care should be observed in and by trial courts, through orderly legal procedure, and without any unnecessary delay or waste of time, to render final the determination of litigation, thereby accomplishing a great saving in expense to the state and litigants.

It not appearing from the record that, in the course of the proceedings had in this cause, any reversible error was committed, we are of the opinion that the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.