**LYLES v. OHEIM.**

No. 14096.

Court of Civil Appeals of Texas. Fort Worth.

May 31, 1940.

Rehearing Denied Sept. 6, 1940.

H. M. Muse, of Wichita Falls, for appellant.

Stine, Bunting & Stine, of Henrietta, for appellee.

SPEER, Justice.

This action is a consolidated one of two matters originating in the Probate Court of Clay County, Texas, in the administration

of the estate of J. L. Huggins, deceased, pending in that court.

J. L. Huggins died testate in 1928. His estate consisted of large property interests, both in and out of the State. His will provided that all property outside the State should be sold promptly and after payment of any debts owing, the proceeds to be divided ratably among twenty-three named beneficiaries. A ranch in Clay County, consisting of more than 13,000 acres, was to be operated for ten years, at the end of which time it was to be sold in a body. There were several hundred head of livestock, and ranch equipment, to be disposed of at about the time the ranch lands were to be sold.

During the time involved in this suit, A. J. Oheim was administrator, de bonis non, of the Huggins estate. C. J. Sherrill was County Judge through the years 1935 to 1938, both inclusive, and John V. Lyles became County Judge of Clay County at the beginning of the year 1939.

In compliance with the terms of the will, the administrator sold the ranch lands, during 1938, subsequent to the date on which he made his annual report, early in June of that year, and received for the estate $225,005.

There were other items of receipts by the administrator during that period of time, which increased the total receipts coming into his hands to $299,844.47. On December 1, 1938, upon request, the administrator, by check No. 273, paid to Judge Sherrill $1,499.22, it being one-half of one per cent, as commissions or fees on said receipts.

On the following June 13, 1939, when the annual account of the administrator came on for approval by the then County Judge Lyles, the item of fees paid to Judge Sherrill by check No. 273, and certain other small items, not necessary to mention, were disallowed; otherwise the account was approved. The administrator appealed from the ruling of the court to the District Court of Clay County.

Judge Lyles filed, in the cause of Estate of J. L. Huggins, deceased, a motion and application for allowance to him of a commission and fees of $1,486.93, it being one-half of one per cent on receipts coming into the administrator's hands since the last annual report, and prayed that the court order the administrator to pay him that sum out of said estate.

The then County Judge, being claimant, was disqualified as County Judge in said

hearing, and Hon. Luther Hoffman was chosen special judge to hear the controversy. The administrator answered and plead payment to the former County Judge, Sherrill. Judge Sherrill, his official bondsmen and the surety on the administrator's bond were either interpleaded or intervened upon their own initiative, but we need not go into those details here.

A hearing was had before the special County Judge and an order was entered denying the claim of Judge Lyles, from which ruling he perfected an appeal to the District Court of Clay County.

After consolidating the two causes in which the estate was involved, a trial was had in the District Court, resulting in a judgment favorable to the estate and the administrator. Judge Lyles perfected this appeal from that judgment.

Judge John V. Lyles is the appellant and A. J. Oheim, individually and as administrator, is appellee.

It is conceded by all parties that there is no conflict in the evidence, and, as we see it, there is only one question of law for our determination, under the established facts.

Appellant, in his brief, says there is only one question for this court to answer; it is: "Are the commissions to a County Judge on the receipts of an estate, due to the County Judge, who acts upon and approves the Annual Account of such Administrator, showing the receipts of such estate received by the Administrator, or are they due to the County Judge who was in office when such estate and such Administrator receive such receipts?"

It is earnestly contended by appellant that the trial court erred in denying him the relief sought when the undisputed evidence showed that he, as County Judge of Clay County, passed upon, as it was his official duty to do, the annual account of the administrator for the fiscal year of June 8, 1938, to June 8, 1939, and that since the commissions on the receipts of the administrator could only be paid upon the approval of the exhibits and annual account, the administrator improperly and illegally paid said commissions to Judge Sherrill, who preceded appellant in office.

The statute relied upon by both parties here is Article 3926, R.C.S.1925, which, in part, reads: "The county judge shall also receive the following fees: 1. A commission of one-half of one per cent upon the actual cash receipts of each executor, ad-

ministrator or guardian, upon the approval of the exhibits and the final settlement of the account of such executor, administrator or guardian, but no more than one such commission shall be charged on any amount received by any such executor, administrator or guardian."

We are unable to find any case in this State where this article has been construed relating to the controversy now before us. This being true, it becomes our duty to construe the language of the Legislature as applicable to the instant facts. The aggregate fees prescribed were intended to compensate the officer who performed the official duties, and not for his successor. Where, as in this case, a County Judge does not succeed himself, his successor, in many instances, is called upon to pass upon the annual account of the administrator, covering a period when his predecessor was in office.

It is argued by appellant that by Article 3925, R.C.S., provisions are made for fees to the County Judge for each order of sale and order of confirmation, covering the duties performed by Judge Sherrill. The same article provides a fee of fifty cents for "each order not otherwise provided for". The last mentioned item would cover an order approving an annual account, the duties performed by Judge Lyles, since there is no specific fee named for the entry of that order. The one-half of one per cent commission on cash receipts by the administrator is by Article 3926, made additional fees to those enumerated in Article 3925.

Appellant relies upon cases of Goodwin, Special County Judge, v. Downs, Tex.Com. App., 280 S.W. 512, and Grice v. Cooley, County Judge, Tex.Civ.App., 179 S.W. 1098. We have devoted much time to a study of those cases and have concluded that they are not controlling here.

In Goodwin v. Downs, supra, the question involved was whether a County Judge was entitled, under Article 3926, to one-half of one per cent commission on a large sum received by the administrator for the performance of a contract which had been entered into by a decedent. In opposition to the claim, it was contended that, since a very large part of the money received had to be promptly disbursed by the administrator for labor and materials, the judge was only entitled to commissions on the profit derived from the contract. It was held that commissions were due on the whole amount received. While it is true

the opinion was based upon a construction of Article 3926, yet there is no analogy between issue in that and the instant case.

In the Grice v. Cooley case, supra, as said by the court: "The issue under the agreed statement of the parties, simply stated, is: When are the commissions provided for by article 3850 [now article 3926] payable?" It seems to us from a reading of that case, that the controversy presented involved only the question of when the County Judge could collect his fees, under Article 3926, supra, more especially the clause which reads: " * * * upon the approval of the exhibits and the final settlement of such executor, administrator or guardian * * *." Put another way, was the county judge required to wait until the final settlement of the estate was made or a guardianship closed and the final report filed and approved before collecting the commission due him under the law? The effect of the holding in that case is that the judge may demand and collect his commission, "upon approval of the exhibits", and is not required to wait until the administration or guardianship is closed. In holding that the fees allowed to the County Judge were collectible "upon approval of the exhibits", the court further held that "exhibits", as used in the statute, embraced annual accounts, such as were then under consideration. Appellant argues that the language used supports his contention. Our statutes pertaining to estates of decedents, and guardian and ward, so frequently refer to exhibits in reports that we are led to believe that the reference to that term by the court in the case under discussion lends no more support to appellant's contention than to those of appellee. It is undisputed that the sale of the real estate was made and the money received by appellee during the administration of Judge Sherrill. The application made by the administrator to sell the real estate was of necessity, under Article 3566, R.C.S., accompanied by an "exhibit" in writing, verified by affidavit, showing the condition of the estate. The application and the exhibit were passed upon by Judge Sherrill before entering an order authorizing the administrator to sell. The record discloses that all the statutory requisites of a valid sale were complied with by the administrator under orders of the court, presided over by Judge Sherrill. We think, as did the court in Grice v. Cooley, supra, that the provisions of Article 3926 were not intend-

ed to require the judge to wait until the estate was closed before collecting his commission, but was due and collectible, "upon approval of the exhibits". The exhibit filed with the application to sell and all subsequent reports were approved by Judge Sherrill until the sale was consummated, the money collected and the administrator made a deed of conveyance to the purchaser. When these things were done, we believe that in fairness, he had earned the commission allowed by law.

■ Little can be accomplished in this discussion by a comparison of the responsibilities resting upon the respective judges in this case, in regard to the duties performed by each. Those duties are all controlled by statutes, and each should be strictly observed. The acts of Judge Sherrill in receiving the application to sell, along with the exhibits thereto, their consideration, order to sell, action upon the report of sale, the requirement and approval of a sufficient sale bond by the administrator, the final confirmation of sale and order to make conveyance, are the all important factors which affect the estate being administered under the court's orders. The ultimate object of our statutory provisions affecting estates, is that the property be protected against waste and dissipation. To our way of thinking, the acts and orders of the court in passing upon applications, exhibits and the confirmation of a sale when found to be fairly made, more effectually protect the estate than the approval or rejection of an annual account with its exhibits, which show the result of a sale made and the funds derived therefrom. The provisions of Article 3537 that the administrator shall make a report and exhibit of the condition of the estate at the end of twelve months after his appointment, and by Article 3320 that he shall thereafter make such a report and exhibit annually during the period of administration, and other provisions that the court shall look into these reports and approve or reject them, cannot supersede the former acts of the judge who likewise approved the application for sale and its exhibits and subsequently ordered the land conveyed and title divested out of the estate. When the administrator, under orders of the court, sells the estate's land to a bona fide purchaser, who has complied with the provisions of the orders of court under which the sale is made, and receives a conveyance from the administrator, the title vests in such a purchaser, irrespective of whether or not that judge or his successor shall thereafter approve the annual account of the administrator in which he, of necessity, must make an accounting for the monies received at such sale. This is true, "notwithstanding such acts [of the administrator] or the authority under which they were performed may afterward be set aside, annulled and declared invalid." Article 3323, R.C.S. The conveyance made by the administrator under these orders of the court vests the title of the estate in the purchaser and constitutes prima facie evidence that all requirements of law have been complied with in making the sale. Article 3586, R.C.S.

■ It is certain that only one such commission as that provided in Article 3926 can be charged on any amount received by an administrator. It is indisputably true that the funds were in the hands of the administrator during Judge Sherrill's term of office. These funds were in the administrator's hands as a result of the official acts of Judge Sherrill. In obedience to those services performed, the administrator had conveyed the lands of the estate to and vested the title in the purchaser. We believe that a fair construction of the Legislative intent, as reflected by Article 3926, is to compensate the judge who performed the services and caused the administrator to receive the funds during his administration. Under the undisputed facts in this case, we do not believe that the statutory provision was meant to inure to the benefit of his successor, simply because he was called upon to approve the annual account of the administrator in which was reflected the official acts of his predecessor. As above shown, the approval of the annual account of the administrator added nothing to the validity of the orders of the previous judge under which the sale was made. Nor would a disapproval of the account and its exhibits affect the validity of those proceedings. The will of the testator provided for the sale of this ranch land at the end of ten years; that time expired during the last year of Judge Sherrill's term of office, and if he had not cooperated with the administrator in making the sale, as he did, the intentions and desires of the testator would have been thwarted, or at least delayed longer than expressed by the testator.

In addition to the reasons we have assigned for the construction we have placed upon the language of Section 1, Article

3926, we note that the commission here in controversy is allowed by that article upon the actual cash receipts of each administrator, "* * * *upon* the approval of the exhibits * * *." To give that provision the meaning contended for by appellant, we would have to substitute the word "for" for the word "upon", as used in the statute, and cause it to read, "* * * for the approval of the exhibits * * *". Sections 2, 3, 4 and 5 of the same Article likewise provide specified fees allowed to the County Judge. Each of those sections begins with "For", viz: Section 2: "For each case of lunacy", so much; Section 3: "For presiding over the commissioners court", so much, and so on.

In the construction of a statute, we must presume that every word was intentionally used by the Legislature for the purpose of making its intention clear. Gulf C. & S. F. Ry. Co. v. Blum Independent School District, Tex.Civ.App., 143 S.W. 353, writ refused. If the Legislature had intended that the commission in controversy was to compensate the county judge *for* the approval of the exhibits, it would have said so, as it did in subsequent sections of the same article. We think the expression used by the article, * * * *upon* the approval of the exhibits", etc., denotes the time when the commission can be demanded; that is, the item may be demanded and collected when the exhibits are approved.

As indicated by us in the outset of this discussion, there were several parties to this suit besides the appellant and appellee. Their respective interests and liabilities were contingent upon the result of the controversy between the parties to this appeal. The judgment entered is lengthy, but it disposes of all the parties and the subject matter in controversy and, as framed, is final and complete. That part of the judgment referable to the parties to this appeal stipulates: "The court having heard the evidence submitted and the argument of counsel is of opinion and finds that said sum of $1,486.93 was properly paid by said administrator (appellee) to C. J. Sherrill, and that the said John V. Lyles (appellant) is not entitled to the same or any part thereof * * * *." The judgment goes on to dispose of several small items which were included in the annual account of the administrator and disallowed by Judge Lyles as County Judge, but no point is made on this appeal concerning said items and we have not attempted to discuss them.

From what we have said, we believe the trial court properly disposed of the issues involved, and that the judgment should be affirmed. It is so ordered.