Dovie H. WALLING, a feme sole, Appellant,

v.

Lorece B. HUBBARD et al., Appellees.

No. 14459.

Court of Civil Appeals of Texas.

Houston.

March 4, 1965.

On Motions for Rehearing April 1, 1965.

Second Rehearing Denied April 29, 1965.

**584**

W. J. Knight, Houston, for appellant.

Ted Kirchheimer, Houston, for appellees.

COLEMAN, Justice.

This is a suit for accounting brought by Dovie H. Walling, one of the residuary legatees under the will of T. B. Hubbard, against Lorece B. Hubbard, individually and as independent executrix of the estate of Gilvie Hubbard. Gilvie Hubbard was the other residuary legatee under the will of T. B. Hubbard and was the independent executor of his estate. By stipulation the appellant restricted her claim for an accounting to sums retained by Gilvie Hubbard as executor's commissions. The estate was distributed prior to trial by an agreement whereby both parties retained their rights to an accounting.

The principal questions presented by this appeal concern the right of an executor to the statutory 5% commission on oil and gas royalties received by the executor by reason of an oil lease executed by the testator and whether or not the executor was entitled to retain from the funds of the estate a reasonable compensation for his services in supervising the operation of the business ventures of the estate, as required by the will, prior to obtaining a court order setting the amount of such compensation.

T. B. Hubbard died May 4, 1935. At the time of his death he owned a tract of land in Brazoria County, Texas, on which he was conducting a dairy business; unimproved acreage in Harris County; improved property in the City of Houston; a drug store; certain real estate in Oklahoma; cattle; personal property, and other assets. He was also engaged in the business of buying brewery mash and selling it as cattle feed. The inheritance tax report shows assets (after deduction of the balance owing on notes secured by mortgages on real estate) of $58,667.33 and debts of $12,289.-39. The mortgage debt was approximately $21,000.00. Before receipt of certain insurance proceeds there was some $1200.00 in cash. By his will he directed Gilvie Hubbard as independent executor without bond to carry on his business (except the drug store). His first bequest was to Mrs. Zona Hensarling of $150.00 per month "out of the revenues" of the estate. He then bequeathed and devised to his brother and sister, Gilvie Hubbard and Dovie H. Walling, share and share alike, all of his property and further provided that their mother "is to be taken care of." There was no provision in the will relating to compensation for the executor. The will provided that his insurance was to go to his brother and sister. The inventory does not list the insurance as an asset of the estate, but it is listed in the affidavit for inheritance tax appraisement. The proceeds of three policies of insurance totaling, after the deduction of loans and premiums, the sum of $17,115.34, were paid to the executor and used to pay debts.

Gilvie Hubbard qualified as executor on May 21, 1935, and continued to serve until his death on January 29, 1959. Since the estate had not been distributed prior to his death, the executor had made no final accounting to Mrs. Walling and she had not requested him to do so. The executor did not keep books and records showing receipts and disbursements other than from the mash business and dairy business. The mash business was discontinued January 1, 1954, and the dairy business in November, 1953.

Prior to January 1, 1944, the executor did not retain any commissions on money received by the estate or money expended by him for the estate. Beginning in 1944 he transferred into his personal account from

estate funds annually a sum roughly equivalent to ten percent of the annual income of the estate from the rents, royalties, net income from the dairy and mash business and other farm operations. (These figures were obtained from income tax returns since no books were kept by the executor showing the commissions which he charged.) The executor retained as commissions from the funds of the estate the total sum of $77,727.-09. The parties stipulated to the various sums of money received by the executor amounting to the total sum of $840,761.02, and to the items which he paid out of the funds of the estate in the course of administration in the total sum of $203,367.99.

Partial distributions of the funds and properties of the estate were made by the executor from time to time, and at the time of his death there was sufficient cash belonging to the estate in estate accounts to equalize distributions between the executor and his sister including the commissions claimed to have been improperly retained. In answer to issues submitted, the jury found that a reasonable compensation for the services performed by the executor in managing the various businesses was the sum of $250.00 per month. The trial court disallowed commissions on cash received and paid out in conducting the businesses, allowed a claim for accounting expense and the extra compensation for managing the businesses and entered a judgment in favor of the executor in the sum of $15,356.62. On motion for new trial the court required a remittitur of $14,062.50, being one-half of the amount found by the jury to be the value of the services rendered by the executor in operating the businesses, resulting in a final judgment in favor of the executor for $1,294.12. All costs, including a fee of $1,000.00 to the guardian ad litem of a minor defendant, were taxed against the appellant.

During the administration the executor collected $593,020.09 by reason of the production of oil and gas from lands of the estate under the terms of a mineral lease executed by the testator. Appellant contends that the trial court erred in crediting the executor's account with 5% of this amount as a statutory commission for the reason that such royalties were not money received in the course of administration as contemplated by former Article 3689, R.C.S., as amended, or Sec. 241 of the Probate Code, V.A.T.S. (Acts 1955, 54th Leg. Ch. 55, p. 88, Sec. 241).

Appellant relies on Spofford v. Minor, 13 Tex.Civ.App. 534, 36 S.W. 771, 1896, writ ref., wherein the court says:

"The right to commissions is only given for receiving and 'paying away' money in the 'course of administration.' It does not arise, in the first instance, from the mere receipt of the estate, nor, in the second, from delivering it to the heirs or legatees as such. The administration of the property, as intended in article 2190, takes place between its receipt by the administrator and its delivery to those entitled ultimately to receive it from him."

In Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, the court said:

"We think it is settled by the decisions of this Court and of this State that a contract affecting land in this State, granting or reserving mineral royalty in such land, constitutes such royalty real property. * * * It is also settled by our decisions that mineral royalty affecting land in this State, granted or reserved, 'and however payable—whether in the specific product (in oil) or in money measured by the value of the product,' is an interest in the land covered by the contract."

As we understand it, it is appellant's position that since the royalty interest reserved in the lease constitutes realty and is part of the corpus of the estate, when the royalties are paid in cash on production they are paid without the exercise of any power by the executor, and he merely receives in the form of cash the equivalent

of the oil and gas in place. It is her position that the oil and gas in place, as well as the production therefrom and the proceeds thereof, constitute the corpus of the estate, and that when the proceeds were received by the executor in cash, he was receiving for the first time the corpus of the estate.

We do not agree with this reasoning. The oil royalties did not constitute "cash on hand" at the time of the death of the testator. On his death the executor came into constructive possession of that part of the oil and gas in place, which had been reserved in the lease. On beginning production the lessee could have delivered the oil to the executor at the well; he could have purchased the oil on his own account; or, he could have delivered the oil into the pipeline to which the well was connected to the credit of the lessor. While the lessee had a right to purchase, there could be no sale until the right was exercised. The oil, in fact, was delivered into the pipeline, and was sold for the account of the lessor. This asset of the estate was converted into cash which was paid to the executor in the course of administration. The executor is entitled to a commission on the cash received where assets of the estate are sold. Cooper v. Schwalbe, Tex.Civ.App., 238 S.W.2d 581, writ ref.; Nations v. Ulmer, Tex.Civ.App., 139 S.W.2d 352, writ dism., judg. cor.; Simpson v. Goggin, Tex.Civ.App., 5 S.W. 2d 610, writ ref.

There appears to be no necessity that the sale be made by the executor so long as he receives the proceeds in cash. Simpson v. Goggin, Tex.Civ.App., supra; Huddleston v. Kempner, 87 Tex. 372, 28 S.W. 936.

Appellant contends that the allowance of commissions on the sale of various tracts of real estate was erroneous because the bequest to Mrs. Zona Hensarling of $150.00 per month out of the revenues of the estate constituted a charge against the entire estate, including the real estate. Art. 3690, R.C.S. 1925, provided that no commission could be allowed for receiving money realized from the sale of property "to satisfy debts against the property" and the paying out of the proceeds in satisfaction of the debt, except as to the excess of the purchase price over the amount of the debt. It is her contention that the statute contemplates, in addition to debts secured by liens on the property sold, all general charges against the property, and requires that all such debts and charges be deducted before the sum can be ascertained on which a commission can be claimed.

In Cooper v. Schwalbe, Tex.Civ.App., 238 S.W.2d 581, writ ref., the court held that a claim filed for federal income taxes constituted a lien against all of the land in the estate and since the land was sold to pay the taxes, the claim of the administrator for a commission on the proceeds of the sale should be rejected on the portion of the purchase price required for the payment of the taxes.

The case of Haldeman v. Openheimer, 103 Tex. 275, 126 S.W. 566, in construing a will creating certain cash legacies and leaving the remainder to testator's wife for her sole use and benefit during her life, and the balance remaining at the time of her death to trustees, held that the cash legacies were a charge upon the entire estate, real and personal.

Reasoning from these cases appellant says that the legacy to Mrs. Hensarling constituted a charge upon the entire estate and that the record reflects that the money received from the sale of real property never exceeded the unpaid legacy.

Haldeman v. Openheimer, supra, quotes the following passage from Harris v. Fly, 7 Paige (N.Y.) 425:

"'Personal estate is the primary fund for the payment of debts and legacies. If the testator therefore gives a legacy without specifying who shall pay it, or out of what fund it

shall be paid, the legal presumption is that he intended it should be paid out of his personal estate only; and if that is not sufficient the legacy fails. So if he directs his executors to pay a legacy without giving to them any other fund than the personal estate out of which they can pay it. But where the real estate is devised to the person who by the will is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised, although the devisee is also the executor, or is the residuary legatee of the personal estate; unless there is something in the will itself to indicate a contrary intention on the part of the testator.' "

■ In this case it is specified that the bequest to Mrs. Hensarling shall be paid out of the revenues of the estate. The fund out of which the bequest is to be paid is specified. This language indicates that the bequest was not intended to be an equitable charge on the real estate. Additionally, there is no evidence that the real estate was sold for the purpose of satisfying debts *against* the property within the meaning of Art. 3690, R.C.S. 1925.

Appellant urges that the trial court erred in allowing commissions on the money paid to the State of Texas in satisfaction of the gross production tax on oil and gas, for the reason that the tax was paid by the purchaser from the proceeds of the sales and that the money used to pay the tax was never received by the executor or paid out by him. By virtue of Title 122–A, Taxation-General, Vol. 20A, V.A.T.S., Article 4.03, the tax on oil produced is a tax on the owner of the royalty interest, as well as the owners of the working interest, measured by the volume of oil produced. The first purchaser of the oil is charged with the duty of deducting the amount of the tax from the proceeds of the sale due the royalty owner and of remitting it to the State. In the event oil is produced, but not sold, the royalty owner is responsible for paying the tax on his share of the production. If the purchaser fails to pay the tax, even though he withholds the amount due from the royalty owner's share of the proceeds from production, the royalty owner is liable for the tax.

In Huddleston v. Kempner, 87 Tex. 372, 28 S.W. 936, the Supreme Court of Texas held that where real estate belonging to an estate was sold by reason of the foreclosure of a mortgage, and the mortgagee was the purchaser for a sum less than the debt secured, since the administrator was not required to deliver his deed without the payment to him in cash of the amount bid, he could tender his deed conditioned on the payment to him of the commission. The Court said: " * * * It would be a narrow construction of the statute to hold that, because he did not demand its delivery (the purchase price), therefore in law he did not receive nor pay out that for which he was responsible as received and paid out. * * * "

· ■ We think this case is distinguishable on the ground that the executor did not have the right to demand that the purchaser pay him for the gross value of the oil received without deduction of the tax. The executor did not "actually" receive the money used to pay the tax;. nor can the amount of the taxes be considered as a sum which he paid out *in cash* in the course of the administration of the estate. Gross production taxes were paid in the total sum of $26,395.70. Commissions were allowed on this sum as cash actually received and as cash paid out. The trial court improperly allowed commissions in the sum of $2,-639.58 by reason of these items.

■ The trial court also allowed the statutory commission on the sum of $1,343.-96 paid by the executor for the support of Mrs. Zona High. While the will provided that Mrs. Zona High "is to be taken care of," no specific bequest was made to her. We think it unnecessary to determine the effect of this provision. If Mrs. High is

a legatee, payments made on her account would constitute payment to a legatee as such, and no commission would be due to the executor. If the executor was under no legal obligation to make payments to Mrs. High, he exceeded his authority in making the payments and no commission was earned. Terrill v. Terrill, Tex.Civ. App., 189 S.W.2d 877, error ref. The commission erroneously allowed the executor on this item amounts to $67.20.

■ The executor was allowed his commission on the sum of $10,700.51 paid to Doyle Hubbard for accountant's fees. The testimony shows that $9,678.51 of that sum was charged against the business revenues in the income tax returns. Financial statements prepared by Mr. Hubbard in evidence reflect items related to the oil operations, rental income, etc. The statutory commissions are not allowed on expenditures made by an executor, which pertain primarily to the operation of a business. Dwyer v. Kaltayer, 68 Tex. 554, 5 S.W. 75. It is apparent that much of the accountant's work was rendered necessary by the fact that the businesses were being carried on by the executor. No commission should have been allowed on this expenditure. The sum of $483.93 was improperly credited to the executor as commission by reason of this error.

■ An item of $408.17 was charged as expense against the farming operation and a commission was allowed on that sum. In the absence of evidence to the contrary, the fact that the executor charged the expense against the farm income would constitute an admission that the expenditure was made in the operation of the business. The sum of $20.41, therefore, was improperly allowed as commissions to the executor.

■ Commissions were properly allowed on the cash paid in settlement of federal income taxes which were assessed against the estate, as well as sums paid for repairs and improvements on properties belonging to the estate.

■ State inheritance taxes in the sum of $814.54 were paid by the executor and a commission was allowed on that sum. This tax is imposed on the right to receive or succeed to the possession or enjoyment of property. It was a charge against each share or interest in the estate and against the legatees or devisees. Norton v. Jones, Tex.Civ.App., 210 S.W.2d 820, writ ref.

The inheritance tax laws in effect in 1935 provided a method by which the county judge should determine the amount of inheritance tax, after which it became his duty to certify the amount of the tax to the executor and to the legatees or devisees, and further provided that the tax should be a lien on the property until paid. Acts 1923, 38th Leg. 2d C.S., p. 63, ch. 29 Sec. 16-a.

Section 21-b of the Act last cited (formerly codified as Art. 7132, V.A.C.S.), provided: "All taxes received under this law by any executor, administrator or trustee, shall be paid by him to the tax collector * * *."

There is in evidence the order of the County Judge of Harris County dated December 5, 1935, fixing the inheritance tax against the share of the estate bequeathed to Gilvie Hubbard and Dovie de La Mar at $407.27 each. The order further authorized and directed the executor to pay such sums to the County Tax Collector and to charge the sums paid to the respective shares "as taxed herein."

■ Since the statute contemplates that the amount of the tax should or could be paid by the legatees to the executor and by him to the County Tax Collector, and since in this case the same result was reached, the payment cannot be considered beyond the power and duty of the executor and the commission was properly allowed.

After the death of the executor, Lorece B. Hubbard, his wife, was appointed executrix of the estate of Gilvie Hubbard. No administration with will annexed was taken out on the estate of T. B. Hubbard, since the only parties interested in the estate partitioned it by agreement subject to this suit for accounting. Neither party had authority to act for the estate of T. B. Hubbard, or to create liabilities against it. McClellan v. Mangrum, 38 Tex.Civ.App. 193, 75 S.W. 840. This estate, therefore, was not liable for the fees of the accountants employed by Mrs. Hubbard to prepare an accounting of the estate of T. B. Hubbard. There is no evidence that Mrs. Walling agreed to pay any part of this expense. It is the duty of an executor to maintain books of account showing all income of the estate being administered, as well as all items of expense paid out on behalf of the estate. The evidence shows that the fees of the accountants in the sum of $2,525.00 were increased, and that most of the work of the accountants was caused by the fact that the executor, Gilvie Hubbard, failed to maintain proper books of account for the estate. Under the circumstances, the trial court erred in allowing appellee to recover one-half of the fee paid to the accountants. While the procedure provided by Sec. 386 of the Probate Code might have been followed in partitioning the property owned jointly by the estate of Gilvie Hubbard and Mrs. Walling, it was not followed; therefore, Sec. 387 of the Probate Code has no application to the expenses incurred in making a voluntary partition or in this action for accounting.

The final points of error relate to the claim asserted on behalf of the executor for extra compensation for his services in operating the businesses previously carried on by T. B. Hubbard.

An independent executor has authority to do those things without a court order that an ordinary executor can do under court order. Rowland v. Moore, 141 Tex. 469, 174 S.W.2d 248. The will of T. B. Hubbard directed that his farm related business be continued by his executor. Since few business ventures could be operated with success under the handicap of paying to the executor five per cent of all items of cash income and five per cent of all cash expenditures, no commission can be earned on the receipts and expenditures of such business ventures, but to compensate the executor the courts can allow the executor a reasonable fee. Dwyer v. Kaltayer, 68 Tex. 554, 5 S.W. 75; James v. Craighead, Tex.Civ.App., 69 S.W. 241; Dallas Tailor's Supply Co. v. Goen, Tex.Civ.App., 25 S.W.2d 224, writ ref.

The trial court submitted to the jury special issues inquiring whether the executor rendered services beneficial to the estate in operating the businesses and what sum per month would be reasonable compensation for such services. Appellant contends that the trial court should also have submitted the question as to whether the services rendered by the executor were of such character, or rendered under such circumstances, as to constitute unusual or extraordinary services for the performance of which compensation might be allowed the executor under the law. Complaint was also made concerning the form of the issues submitted. Appellant also contends that there was no evidence of probative force to show the value of the services and that the answer was so grossly excessive as to show that the jury was prompted by passion, prejudice or some other improper motive. It is also contended that the executor's claim for special compensation was improperly allowed because it was barred by limitations.

By Section 241 of the Probate Code the probate court is authorized to allow reasonable compensation to an executor for managing a business belonging to the estate. This section was enacted some four years prior to the death of the executor, but before its enactment the courts had authorized such allowances in the exercise of equitable powers.

Appellant makes the assumption that the executor charged and retained a commission of 10% on all cash received by him for the estate, and that, therefore, the amount in excess of 5% was illegally retained in spite of the fact that he was clearly entitled to retain the statutory percentage of cash paid out as well as the statutory commissions which accrued prior to 1944. While the evidence shows that the amounts charged by the executor as commissions closely approximated 10% of the cash received, this circumstance is not of controlling importance.

 The independent executor has the same responsibilities and duties with reference to the estate as does the executor under the direction of the probate court. Roy v. Whitaker, 92 Tex. 346, 48 S.W. 892. He is entitled to pay claims against the estate out of funds of the estate without court authorization in all situations where an ordinary executor could pay them after securing a court order. Lang v. Shell Petroleum Corporation, 138 Tex. 399, 159 S.W.2d 478. We see no reason to except from this rule claims against the estate owned by the executor, whether incurred before or after the death of the testator. Prior to the adoption of the Probate Code, the probate court had no jurisdiction to approve the final account of an independent executor or to allow a personal claim in his favor against the estate which accrued during his tenure as executor, unless filed in connection with a suit for partition or settlement of the estate. Rowland v. Moore, 141 Tex. 469, 174 S.W.2d 248. When claims against the estate are denied by the independent executor, suit may be instituted upon such claim as in other civil cases. Kopplin v. Ewald, Tex.Civ.App., 70 S.W.2d 608. We think it does not follow that the executor must sue himself in District Court to establish his personal claim against the estate. He may allow his own claim in the exercise of the discretion confided in him by the testator. If a subsequent action for accounting is brought against him by those entitled to the estate, he must justify his action in allowing himself compensation for carrying on a business, and the reasonableness of the amount allowed, just as he must justify any other item which he might claim as an expense of administration.

 Under this view of the law, we are unable to determine from the evidence that the executor retained in any year compensation in excess of the statutory commissions due him for that and preceding years, plus the amount determined by the court to be a reasonable compensation for the services of the executor in conducting the business of the estate. No penalty interest, therefore, can be assessed against the executor.

 Since the adoption of the Probate Code the county court has had jurisdiction to "act on applications" from independent executors. for reasonable compensation for services in managing a business of the estate. Gilvie Hubbard had ceased to operate the businesses of the estate prior to the effective date of the Probate Code. This provision of the Code would have no application to this case.

 Appellant has invoked the power of the District Court to settle the account of Gilvie Hubbard as executor of the estate of T. B. Hubbard. It is well settled that in suits to settle the accounts of a deceased administrator or executor the District Court performs the function of the Probate Court in the settlement of a final account, and can review the various annual accounts, which do not have the force of a final judgment. Anderson v. Armstrong, 132 Tex. 122, 120 S.W.2d 444. In such cases the District Court has the right to adjust all allowances to and charges against its administrator, and statutes of limitation have been held inapplicable because the entire matter is in the hands of the Probate Court. The same result should follow in the case of an independent executor. Roy v. Whitaker, 92 Tex. 346, 48 S.W. 892; Smith v. Belding, Tex.Com.App., 237 S.W. 246; Legler v.

Legler, Tex.Civ.App., 189 S.W.2d 505, writ ref., w. m.

■ In determining the reasonableness of compensation to be allowed an executor for operating a business after the services have been performed, there appears to be no necessity for determining a monthly salary as was done in this case. The total amount to be allowed is the ultimate issue. The work was performed each month although the time required might vary slightly from month to month. There was sufficient evidence to support the answers made by the jury to the issues on compensation. While we do not approve the form of the Special Issue No. 2, we do not think the Court fell into such error as was calculated to cause the rendition of an improper judgment.

The other points of error urged by appellant have been carefully considered and are not thought to present reversible error.

■ Appellee complains of the action of the trial court in disregarding jury findings to the effect that it was necessary to employ the services of an attorney, after the death of Gilvie Hubbard, to partition the estate of T. B. Hubbard and that the reasonable and proper charge for such services was the sum of $4,330.00. There was no understanding, in connection with the agreement partitioning the estate of T. B. Hubbard, that appellant would pay any part of the fees of the attorneys employed by appellee. The evidence shows that the lawyers performing the services understood that they were employed by Mrs. Hubbard and were not representing Mrs. Walling. Since their interests were adverse, the lawyers could not have represented both parties properly. They could not have been representing the estate of T. B. Hubbard since no one was authorized to act as administrator of that estate. Section 387 of the Probate Code was not applicable since this was not a proceeding, authorized by Section 386, in the County Court to par-

tition assets between the estate of Gilvie Hubbard and Mrs. Walling. The action complained of was not error.

The trial court denied the executor commissions on certain funds received by him in cash in connection with the farming operations and also on certain money paid out for taxes and insurance premiums on farm lands and buildings. All of these items properly were included as income or expense in the business operations of the estate, and the trial court properly refused to allow commissions on those items. Dwyer v. Kaltayer, 68 Tex. 554, 5 S.W. 75.

By its verdict the jury found that the sum of $250.00 per month was a reasonable compensation to Gilvie Hubbard for the services rendered in operating the businesses belonging to the estate. The trial court required a remittitur of $14,062.50, finding that the jury's answer to this issue was excessive. Appellee has assigned this action as error as permitted by Rule 328, T.R.C.P. In Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835, the court said:

■ "* * * [W]here the trial judge has ordered a party to remit a portion of the jury verdict as a condition for overruling a motion for new trial, the Court of Civil Appeals, in passing upon such action under Rule 328, supra, should allow the trial court's action to stand unless it be of the opinion that the remittitur ordered by the trial court, when considered in the light of the whole record, would render the order of remittitur manifestly unjust. * * *" From a consideration of the record as a whole, we cannot say that the remittitur ordered by the trial court is manifestly unjust.

The judgment entered by the trial court improperly allowed the executor commissions in a total amount of $3,211.12 and improperly charged appellant with accountant's fees in the sum of $1,262.50. The judgment is reversed and judgment is here rendered in favor of appellant and against appellees in the sum of $3,179.50. Costs

in the trial court and in this Court are taxed against appellees.

Reversed and rendered.

## On Motions for Rehearing

In our original opinion we held that certain items of income and expense were incurred in the business operations of the estate and that the trial court properly refused to allow commissions on such items, relying on Dwyer v. Kaltayer, 68 Tex. 554, 5 S.W. 75. On re-examining this question we have determined that we were in error. In the case cited above the Supreme Court allowed a commission on the money realized from the sale of the goods on hand at the testator's death. It determined that the executor should receive a reasonable allowance for the time and labor bestowed by him upon the business, rather than a commission "upon the purchase and sale of new goods". The court did not discuss the type of income and expense with which we are concerned here.

■ We are of the opinion that the proper rule to be applied is to deny commissions on income arising out of the business and an expense reasonably incurred in the production of such revenue, provided the income would not have been realized, or the expense incurred, in the absence of such business operation.

Appellee specifically complains of the refusal on the part of the trial court to allow commissions on the following items:

MONIES RECEIVED DURING THE COURSE OF ADMINISTRATION

| | | |
|---|---|---|
| 1. | Land Lease rental | $12,463.23 |
| 2. | Rent from tenant house on farm | 4,412.00 |
| 3. | Monies received from Agriculture Adjustment Bureau | 1,470.13 |
| 4. | Farm rent on Oklahoma Property | 1,447.19 |

MONIES PAID OUT DURING THE COURSE OF ADMINISTRATION

| | | |
|---|---|---|
| 1. | Taxes, 1271 Ac., Brazoria County | 106.32 |
| 2. | Taxes, 240 Ac., McClain County, Oklahoma | 26.27 |
| 3. | Property taxes paid County, State and School, Brazoria County | 17,011.10 |
| 4. | Taxes on Farm and Dairy | 7,567.08 |
| 5. | Insurance premiums on Farm building | 1,818.83 |

———◆———

■ The executor carried on certain business operations previously conducted by the testator. The revenues listed above, with the possible exception of the money received from the Agriculture Adjustment Bureau, apparently are not revenues derived from either of these business enterprises. None of the items of expense appear to have been made necessary by the operation of the business enterprises. There is no evidence in the record explaining any of these items, either of expense or revenue. It was stipulated that the money was received, or paid out, in the course of administering the estate. The fact that some of the items under general accounting principles would be considered in determining profit or loss is not a controlling factor. A commission of $2316.10 should have been allowed.

The appellees' motion for rehearing is granted in part and the judgment previously entered by this Court is modified so that the judgment rendered against appellees will be in the sum of $863.40 instead of $3,179.50. In all other respects the motion is overruled.

Appellant's motion for rehearing is overruled.

Appellant's motion for rehearing overruled; appellees' motion for rehearing granted in part; former judgment vacated, set aside and annulled; corrected judgment rendered and entered and opinion on motions for rehearing filed April 1, 1965.