**Harry Lee CARTER, Appellant,**

**v.**

**Lady P. BRADY, Individually and as Independent Executrix of the Estate of Frank T. Brady, Deceased, Appellee.**

**No. 14602.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 8, 1967.

Rehearing Denied Jan. 24, 1968.

Cofer, Cofer & Hearne, Austin, Tom Y. Banks, San Antonio, for appellant.

Carl Wright Johnson, Matthews, Nowlin, Macfarlane & Barrett, W. F. Nowlin, San Antonio, for appellee.

CADENA, Justice.

Appellant, Harry Lee Carter, seeks to compel appellee, Lady P. Brady, individually and as independent executrix of the estate of her brother, Frank T. Brady, who died September 5, 1954, to reimburse him, out of assets of the estate not the subject of specific testamentary disposition, for excessive payments made by him in satisfaction of a lien on portions of the estate. In this connection, Carter also seeks to compel Lady Brady to render an accounting, and

his pleadings include a prayer for the closing of the independent administration. The district court, where the suit was originally filed, sustained Lady Brady's plea in abatement and dismissed Carter's action.

Testator's holographic will was admitted to probate September 28, 1954, and since then the administration of the Brady estate has been the source of a series of legal disputes. The nature of the prior litigation must, of necessity, be discussed in the course of this opinion. Insofar as the provisions of the will are concerned, it is only necessary, for the purpose of deciding this case, to note that testator devised to his friend, Gladys Nichols, certain realty, referred to herein as the Brady Building, in San Antonio, and that Lady Brady, in addition to receiving specific devises and bequests, was also named as the recipient of the residuary estate. At the time of his death, testator was indebted to the San Antonio Loan & Trust Company in the sum of $756,602.00, which indebtedness was evidenced by a promissory note secured by a deed of trust on certain lands in Harris County and Bexar County, including the Brady Building.

On September 29, 1955, Gladys Nichols, the devisee of the Brady Building, filed suit No. F–96,477, in the District Court of Bexar County, seeking, among other things, a construction of the Brady will and the appointment of a receiver to take control of certain assets of the estate. In her answer, Lady Brady sought a construction of the will and asked for instructions relating to the administration of the estate. Gladys Nichols then dismissed her action but remained in the case as a defendant, filing an answer in which, in addition to setting forth her contentions concerning the proper interpretation of the will, she sought to compel Lady Brady to render an accounting. The trial court, after severing all questions relating to accounting, proceeded to hear the will construction aspects of Cause No. F–96,477, with the accounting features of the case remaining on the docket for separate trial as Cause No. F–96,477–A. Insofar as here relevant, the result of the will construction litigation was a judgment that the Brady Building, which had been devised to Gladys Nichols, was entitled to exoneration from the indebtedness against it out of property of the estate not the subject of specific testamentary disposition. Brady v. Nichols, 308 S.W.2d 100 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.); 158 Tex. 382, 312 S.W.2d 381 (1958).

In May, 1958, Carter intervened in Cause No. F–96,477–A, the accounting features of the original suit, alleging that in 1957 Gladys Nichols had conveyed to him an undivided one-half interest in the Brady Building. In December, 1958, Carter and Gladys Nichols filed their cross-action against Lady Brady in that proceeding, alleging mismanagement of the estate and seeking an accounting.

In January, 1960, in litigation unconnected with the administration of the Brady estate, an agreed judgment was entered decreeing that the 1957 deed from Gladys Nichols to Carter was intended merely as security for a debt of $70,000.00 owed to Carter by Gladys Nichols. The judgment allowed Carter recovery against Gladys Nichols in the amount of $70,000.00, and fixed a second lien in his favor against her interest in the Brady Building. This judgment, however, postponed sale of the Brady Building under such lien until after March 1, 1961.

Meanwhile, Lady Brady, as independent executrix of the Brady estate, reduced the amount of the debt owed to San Antonio Loan & Trust Company to $500,000.00. This was accomplished by applying to such indebtedness the net proceeds of the sale of Harris County lands which were subject to the lien, and by paying to San Antonio Loan & Trust Company, out of funds belonging to the Brady estate, the sum of $147,141.70. The remaining indebtedness of $500,000.00 was then refinanced by the Alamo National Bank, with the original note and deed of trust lien being transferred

to the bank, making the bank the holder of the first lien on the Brady Building.

In 1961 Lady Brady found a purchaser willing to pay $650,000.00 for the Brady Building if a judgment authorizing the sale, binding on Carter, the junior lienholder, was obtained from a court of competent jurisdiction. Lady Brady filed suit in April, 1961, naming Carter as one of the defendants, alleging the necessity for the sale of the Brady Building. Carter objected to such sale and tendered, unconditionally, into court the sum of $660,891.70, representing the $513,750.00, principal and interest, allegedly due the first lienholder, Alamo National Bank, and $147,141.70, funds of the Brady estate, which had been used to reduce the initial indebtedness. In connection with such tender, Carter released all liens and claims which he might have against the Brady estate, other than the Brady Building, and against the beneficiaries under the will, other than Gladys Nichols, "except as the residuary estate * * * upon a proper final accounting may be liable to exonerate the indebtedness against the Brady Building."

On May 11, 1962, the district court entered judgment to the effect that sale of the Brady Building was not necessary and, consequently, authorization of such sale was refused. This judgment further ordered payment of the sums of $513,750.00 and $147,141.70, tendered into court by Carter, to the Alamo National Bank and to Lady Brady, executrix, respectively, with the provision that the amount paid to Lady Brady was to be accounted for in the final accounting and closing of the administration. In addition, the judgment declared that Carter was subrogated to the Alamo National Bank's first lien, insofar as the Brady Building and the residuary estate of Frank T. Brady were concerned. Because of the payment of $147,141.70 by Carter, the court decreed that he was subrogated to the liens held, successively, by the San Antonio Loan & Trust Company, Lady Brady, independent executrix, and the estate of Frank T. Brady against the Brady

Building, and that, as to the "entire indebtedness" Carter "has become subrogated insofar as the residuary estate of Frank T. Brady, deceased, is concerned." No appeal was taken from this judgment.

On May 8, 1962, Carter obtained execution and order of sale in connection with the foreclosure of his second lien, and at the sheriff's sale held on June 5, 1962, he purchased the interest of Gladys Nichols in the Brady Building. He then requested Lady Brady to release the Brady Building from the administration and to surrender possession thereof to him. Lady Brady then petitioned the district court for permission to surrender possession of the Brady Building to Carter, and, on October 14, 1962, despite the objections of Gladys Nichols, an order was entered directing the release of the Brady Building from the independent administration and surrender of possession thereof to Carter, on condition that Carter hold Lady Brady harmless from all claims arising out of such surrender of the building to him and his operation thereof. This order expressly recited that nothing contained therein should be construed as affecting the rights of the parties under the judgment entered on May 11, 1962, which denied authorization of sale of the Brady Building and established rights accruing to Carter as the result of his payment of $660,891.70, as detailed above. Lady Brady delivered possession of the Brady Building to Carter on November 1, 1962.

On July 14, 1964, Carter, by application filed in the probate court, sought to compel the closing of the independent administration of the Brady estate. In his application Carter, after reciting payment by him of the sum of $660,891.70 and the provisions of the judgment of May 11, 1962, establishing his subrogation rights, asserted that there was no need for further administration of the estate and that there remained in the residuary estate the sum of $300,000.00. He also demanded that Lady Brady be compelled to render an accounting, and that the assets remaining in the residuary estate be delivered to him.

The probate court sustained Lady Brady's plea in abatement and dismissed the application. On appeal to the district court the same judgment was rendered. This Court affirmed the dismissal, holding that Carter, not being a "distributee," had no standing to file an application to close the independent administration under Section 152 of the Probate Code, V.A.T.S. Carter v. Brady, Tex.Civ.App., 400 S.W.2d 620 (1966, no writ).

Carter then returned to the district court where Cause No. F–96,477–A (the accounting features severed from the suit originally filed in September, 1955) was still pending. On July 26, 1966, he filed his third amended answer and cross-action in that proceeding. In that pleading Carter, after outlining substantially the history of the administration and its attendant litigation as set forth above, asserted his right to reimbursement from the residuary estate, by way of subrogation and exoneration, for excessive payments made by him as junior lienholder to protect the Brady Building from sale under the first lien against it and other portions of the Brady estate. After alleging mismanagement of the estate by Lady Brady, Carter demanded an accounting for the purpose of determining whether there remained assets in the residuary estate, asserting that a true accounting would reveal the existence of such assets to which he alleged he was entitled. Finally, contending that there was no need for further administration, he prayed that the independent administration be closed.

Once again, Lady Brady interposed a plea in abatement which was sustained and Carter's cross-action was dismissed. It is Carter's appeal from this action of the trial court which is now before us.

The order of the court sustaining the plea in abatement and dismissing Carter's action is couched in general terms, without indicating the basis for the ruling.

That portion of Lady Brady's pleading which is designated as her amended plea in abatement consists of more than seven pages. It consists, in part, of a recital of the history of the administration of the estate; a summary of the various suits filed in connection with such administration and the results of each suit; a history of the manner in which Carter acquired his second lien against the Brady Building and the events leading up to his payment of the sum of $660,891.70 and the acquisition by him of the subrogation rights under the judgment of May 11, 1962; and a narrative describing his subsequent foreclosure of his second lien, acquisition of title to the Brady Building, assumption of possession thereof, and continued possession and operation of the Brady Building since November 1, 1962. The plea then alleges that Carter, by electing to acquire title to the Brady Building and inducing Lady Brady to surrender possession of the building to him, as owner, conclusively elected to abandon whatever rights he might have acquired by virtue of his payment of the $660,891.70 and under the judgment of May 11, 1962. Lady Brady then contends, still seeking abatement of Carter's action, that when Carter acquired title to the Brady Building his rights as junior lienholder, as well as his rights resulting from his subrogation to the first lien, were destroyed by operation of the doctrine of merger. Finally, Lady Brady alleged that Carter was not a party in interest to the proceedings, and contended that the judgment dismissing Carter's application to close the administration, filed in the probate court, and the affirmance of such dismissal by this Court in Carter v. Brady, supra, was a conclusive adjudication of Carter's lack of standing to maintain the present action.

It is apparent that many of the allegations contained in the plea in abatement do not constitute grounds for abating Carter's suit. The allegations asserting that Carter, by demanding and receiving, as owner, possession of the Brady Building, conclusively elected to pursue his rights as owner, thus abandoning his rights as junior lienholder and his rights acquired by way of subrogation, as well as any rights

he might have had to exoneration from the residuary estate, present matters which are conclusive answers or defenses to the merits of Carter's cause of action. The same is true of the contention that the rights now being asserted by Carter were destroyed by operation of the doctrine of merger, when he acquired the fee simple title to the Brady Building. Whenever the subject matter of a defensive plea is that the claimant cannot maintain a suit at any time with respect to the cause of action which he is asserting, such matter should be pleaded in bar, while facts which merely defeat the present proceeding and do not establish that claimant is forever precluded should be pleaded in abatement. Pucek v. Koppa, 32 S.W.2d 248 (Tex.Civ.App.— Waco 1930, no writ); 2 McDonald, Texas Civil Practice, § 7.04, pp. 615–616 (1950). It is not appropriate to attempt to determine the merits of claimant's asserted cause of action upon the hearing on a dilatory plea such as a plea in abatement.

■ Since these portions of the plea in abatement are insufficient as such, they can furnish no support for the action of the trial court in sustaining the plea. In this connection, the record reflects that, at the time of the hearing on the plea, all parties, including the court, were proceeding on the assumption that the hearing was limited to the determination of matters relating to abatement of Carter's action.

Essentially, Carter's claim was that, because of the moneys paid by him, as junior lienholder, to protect the Brady Building from sale for the purpose of satisfying the lien indebtedness against it, and because he had acquired the interest of Gladys Nichols in the Brady Building, he had a right to reimbursement from assets of the residuary estate. Basically, then, he was asserting a claim against the residuary estate and against Lady Brady, individually as residuary legatee. Since, during various stages of the protracted litigation, Lady Brady had filed exhibits showing that there were no assets in the residuary estate, Carter, after alleging mismanagement, sought the

aid of the court in determining whether there were, in fact, assets which were subject to his claim. Hence, he, understandingly, sought to compel an accounting.

■ The probate court has no jurisdiction to determine the validity of claims against an estate being administered by an independent executor. The district court or county court has jurisdiction of suits involving claims against such an estate. Rowland v. Moore, 141 Tex. 469, 174 S.W. 2d 248 (1943). The amount of the claim asserted by Carter was within the jurisdiction of the district court. It is also settled that the district court has original jurisdiction to compel an independent executor to render an accounting. O'Connor v. O'Connor, 320 S.W.2d 384 (Tex.Civ.App.— Dallas, 1959, writ dism'd). It thus appears that the district court had power to determine the validity of Carter's claim and to compel an accounting.

■ In her brief, as in her plea in abatement, Lady Brady contends that, in fact, Carter has no claim against the residuary estate or against her as residuary legatee. As pointed out above, these are questions relating to the merits of the case and are not properly raised by plea in abatement.

■ If Carter does, in fact, have a claim against the residuary estate or against Lady Brady, certainly he has standing to assert such claim in a court. Perhaps, as Lady Brady insists, he has no claim, but no exception was leveled at the sufficiency of his pleadings, and it is impossible to treat the plea in abatement as a special exception. The trial court certainly did not treat it as a special exception, nor did the parties. This is made abundantly clear by the fact that Lady Brady thought it necessary to introduce evidence in support of the plea. The order sustaining shows on its face that it is based on the evidence heard by the trial court.

■ We reject the contention that the dismissal, affirmed by this Court in Carter v. Brady, supra, of Carter's abortive at-

tempt to compel a closing of the administration and to compel an accounting and collect his claim by application filed in the probate court is a conclusive adjudication that Carter has no standing to assert his claim in the district court. As far as this Court's opinion in that case is concerned, it does no more than hold that, since Carter is not a person named in the will, nor a person who would be entitled to any portion of the estate under the statutes of descent and distribution, he is not a "distributee" within the meaning of § 152 of the Probate Code which authorizes distributees to compel a closing of an independent administration. This is made clear by the following language from that opinion: "No one other than a distributee can force the closing of an independent administration. Harry Lee Carter is not a distributee, and therefore he cannot compel the closing of the Frank T. Brady Estate," 400 S.W.2d at p. 622.

 It is true that, in his application to close the administration, Carter alleged that he had a claim against the residuary estate, alleged mismanagement, and sought an accounting and recovery of the money he alleged was due him. But, as pointed out above, the probate court, as such, has no power to determine the validity of claims against an estate in the process of independent administration. Nor is the probate court vested with general power to compel an independent executor to render an accounting. Gonzalez v. Gonzalez, 309 S.W.2d 111 (Tex.Civ.App.—Fort Worth 1958, no writ). Under these circumstances, it cannot be said that the action of the probate court in sustaining a plea in abatement and dismissing Carter's application could operate as a conclusive adjudication concerning questions which that court had no power to decide. These same considerations operate to limit the effect of the orders of the district court, exercising appellate jurisdiction, and of this Court, to simple determinations of the fact that Carter had no standing to compel a closing of the administration.

 Without passing on the question of whether a district court has jurisdiction to entertain an application to close an independent administration, we hold that, as explained in our opinion in Carter v. Brady, supra, Carter is not a party authorized under § 152 of the Probate Code to institute such proceedings. Therefore, insofar as Carter's pleadings in the district court sought to compel a closing of the administration, the sustaining of the plea in abatement was proper.

 That portion of the case by which Carter seeks to compel the closing of the administration of the estate of Frank T. Brady, deceased, is severed from the remainder of the case, and as to it the order of dismissal is affirmed. Insofar as Carter's action seeking to establish a claim against the residuary estate and Lady Brady, as independent executrix and individually, and seeking an accounting is concerned, the judgment of the trial court dismissing the action is reversed and the cause is remanded for further proceedings.