Beatty OLDHAM, Individually and as Independent Executor of the Estate of Annie Hillboldt, Deceased, Appellant,

v.

Leroy KEATON and Bob Keaton, Appellees.

No. 8718.

Court of Civil Appeals of Texas, Texarkana.

Jan. 31, 1980.

Rehearing Denied March 31, 1980.

Robert E. Morse, Jr., C. Boone Schwartzel, Vinson & Elkins, Houston, for appellant.

Charley L. Smith, Douglass D. Hearne, Stayton, Maloney, Hearne & Babb, Austin, for appellees.

CORNELIUS, Chief Justice.

Leroy Keaton and Bob Keaton brought this action against Beatty Oldham, independent executor of the will of Annie Hillboldt, deceased, to compel Oldham to close the independent administration and distribute the assets of the estate to the trustees of a testamentary trust created by the will. The suit also sought the return of alleged excess executor's fees and the removal of Oldham as one of the trustees of the trust.

The Keatons purchased the interests of Eric and Jimmie Swearingen in Mrs. Hillboldt's estate. Mrs. Hillboldt's will provided that the corpus of the estate was to be held in trust during the lives of seven older family members designated as Class A beneficiaries who were to share ⁷⁄₁₁ths of the income, with ¹⁄₁₁th each to go to four younger family members designated as Class B beneficiaries. At the death of the Class A beneficiaries, the Class B beneficiaries, plus four other family members, would receive a ⅛th remainder interest each. Eric and Jimmie Swearingen were neither Class A nor Class B beneficiaries, but were each entitled to a ⅛th remainder. They sold those interests to the Keatons, who were not named in Mrs. Hillboldt's will.

In a non-jury trial the court rendered judgment in favor of the Keatons ordering Oldham to pay the estate the sum of $4,812.87 representing unauthorized executor's fees, and ordering him to "proceed forthwith instanter to close said Estate and distribute its assets in accordance with the Last Will and Testament of Annie Hillboldt, Deceased." The court did not remove Mr. Oldham as one of the trustees of the testamentary trust.

Mr. Oldham has assigned ten points of error which will be grouped for discussion. The first group asserts that the trial judge erred in overruling Oldham's first amended plea of privilege.

The third amended original petition alleged that Oldham had breached his fiduciary duty to preserve and maintain the estate assets, was guilty of committing waste of the estate's lands situated mainly in Austin County where suit was filed, and had made unauthorized distributions to the trust's beneficiaries. The petition prayed for damages resulting from waste and negligence in administering the estate, for an order requiring Oldham to file a full accounting, for the closing of the estate and the distribution of the assets to the trustees, and for costs and attorney's fees. Under this state of the pleadings, Oldham filed his original plea of privilege to be sued in Harris County, the county of his residence. The Keatons filed their controverting affidavit which asserted that venue was proper in Austin County pursuant to Subdivisions 14 (suits for waste or damage to land), 9a (suits for negligence), 18 (revision of probate), and 11 (suits involving inheritances) of Tex.Rev.Civ.Stat.Ann. art. 1995. A hearing was held and Oldham's plea of privilege was overruled. Oldham did not appeal the court's ruling. Subsequently, the Keatons filed their fifth amended original petition. That pleading alleged essentially the same facts as the former pleading, some in more detail than before, but the prayer for relief did not contain a plea for damages. Instead it prayed for reimbursement of alleged excess executor's fees, an order requiring that the administration be closed, and that Oldham be removed as one of the trustees. It also contained a prayer for general relief. Oldham took the position that the amendment abandoned the only cause of action previously pleaded which would sustain venue in Austin County, i. e., damages for negligence, thus giving him the right to file a new or an amended plea of privilege. The trial court disagreed and overruled the amended plea. No new controverting affidavit had been filed.

The trial court was correct in overruling the amended plea of privilege. Where a plaintiff by amended petition abandons the cause of action on which venue is based and relies only upon causes of action not properly triable in the county where the suit is filed, the right to then file a plea of privilege enures to the defendant. *City of San Antonio v. United Gas Pipe Line Company*, 354 S.W.2d 217 (Tex.Civ. App. Austin 1962, no writ); *Idaho Oil Co. v. Atlas Supply Co.*, 166 S.W.2d 740 (Tex.Civ. App. Fort Worth 1942, no writ); *Gossett v. Lone Star Building & Loan Ass'n.*, 143 S.W.2d 219 (Tex.Civ.App. Galveston 1940, writ dism'd); *Wood v. Fulton Property Co.*, 90 S.W.2d 617 (Tex.Civ.App. Eastland 1936, no writ); *Farnham v. First National Bank*,

28 S.W.2d 883 (Tex.Civ.App. El Paso 1930, no writ); *Johnson v. Adams*, 291 S.W. 578 (Tex.Civ.App. Fort Worth), *rev'd on other grounds, Adams v. Johnson*, 298 S.W. 265 (Tex.Com.App.1927, judgmt. adopted); *Fant v. Kenedy Pasture Co.*, 69 S.W. 420 (Tex.Civ.App.1902, no writ). Since the second plea here was not controverted, the trial court had no choice but to sustain it if the Keatons had abandoned all causes of action properly triable in Austin County. *Wilson v. Groos National Bank of San Antonio*, 535 S.W.2d 374 (Tex.Civ.App. Tyler 1976, no writ); *Calvert Fire Ins. Co. v. Carroll*, 231 S.W.2d 490 (Tex.Civ.App. Texarkana 1950, no writ); Tex.R.Civ.P. 86. But we do not find that to be the case. Both petitions, for example, alleged that the bulk of the estate assets consisted of lands situated mainly in Austin County, and alleged in considerable detail certain acts and omissions of Mr. Oldham which, it was asserted, constituted waste of such lands. Specific allegations were made as to the fences and other improvements, as well as the pasture and the lands themselves. Subdivision 14 of Article 1995 provides that:

> "Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, *or to prevent or stay waste on lands*, must be brought in the county in which the land, or a part thereof, may lie." (Emphasis added.)

"Waste", as known at common law and as used in Subdivision 14 of Article 1995 refers to an unauthorized destruction or severance of improvements, trees, minerals, or other corporeal hereditaments on or from land belonging to the person with respect to whom such waste is committed, by some other person who did not have title but may be rightfully in possession. *Phillips Petroleum Co. v. Mecom*, 375 S.W.2d 335 (Tex. Civ.App. Austin 1964, no writ); *Gulf Oil Corporation v. Horton*, 143 S.W.2d 132 (Tex. Civ.App. Amarillo 1940, no writ). Although the fifth amended petition did not specifically pray for damages due to waste, as the third amendment did, it alleged the acts of

waste in even more detail than the former pleading and it prayed that the administration be closed and the assets delivered to those who were entitled thereto under the terms of the will. The allegations were thus broad enough to constitute an action to stay or prevent waste of lands. We cannot conceive of any better way to stay or prevent waste being committed by a fiduciary in possession of another party's lands, than by taking possession of those lands away from that fiduciary, and delivering possession to the owner, or to someone acting for the owner. See *Continental Oil Company v. Anderson*, 405 S.W.2d 622 (Tex.Civ.App. Eastland 1966, writ dism'd); *Murtex Oil Company v. Murphy*, 395 S.W.2d 853 (Tex. Civ.App. Texarkana 1965, no writ); *Lower Nueces River Water Supply Dist. v. Pleasanton*, 251 S.W.2d 777 (Tex.Civ.App. San Antonio 1952, no writ); *Tidal Oil Co. v. Grays*, 54 S.W.2d 1043, *reh. denied*, 64 S.W.2d 405 (Tex.Civ.App. Waco 1932, no writ); *Jackson v. First National Bank*, 290 S.W. 276 (Tex.Civ.App. Amarillo 1927, writ dism'd).

Mr. Oldham also contends that the trial court did not have jurisdiction to entertain the action to close the independent administration; that the Keatons had no standing to bring the suit; and that the other beneficiaries of the testamentary trust were indispensable parties without whom the trial court could not proceed to determine the controversy. We cannot agree.

■■ On the question of jurisdiction, it is well settled that the district court has the power to appoint a receiver to take charge of an independent administration in order to protect the estate from mismanagement or unauthorized dissipation. *Griggs v. Brewster*, 122 Tex. 588, 62 S.W.2d 980 (1933); *First State Bank of Bellevue v. Gaines*, 121 Tex. 559, 50 S.W.2d 774 (1932); *Stanley v. Henderson*, 139 Tex. 160, 162 S.W.2d 95 (1942); *Laurie v. Stabel*, 482 S.W.2d 652 (Tex.Civ.App. Amarillo 1972, no writ); *Metting v. Metting*, 431 S.W.2d 906 (Tex.Civ.App. San Antonio 1968, no writ);

*O'Connor v. O'Connor*, 320 S.W.2d 384 (Tex. Civ.App. Dallas 1959, writ dism'd); *Huth v. Huth*, 110 S.W.2d 1011 (Tex.Civ.App. San Antonio 1937, writ dism'd). The rule is especially applicable when the plaintiffs are seeking to protect their interests in land, where money damages are usually inadequate. See *Metting v. Metting*, supra. It is also well settled that the district court, as well as the probate court,[1] may require an independent executor to account to the persons entitled to the estate, and that when it appears by the pleadings and proof that the suit involves controversies and issues between the parties for which the probate jurisdiction of the county court is inadequate to grant the relief sought, the district court has jurisdiction and may grant the necessary relief. *Griggs v. Brewster*, supra; *Gregory v. Ward*, 118 Tex. 526, 18 S.W.2d 1049 (1929); *Metting v. Metting*, supra; *O'Connor v. O'Connor*, supra. This power has frequently been used where the independent executor withholds the estate's assets, claiming some interest therein adverse to the devisees and legatees. *Griggs v. Brewster*, supra; *Stanley v. Henderson*, supra; *Leach v. Leach*, 208 S.W.2d 618 (Tex.Civ.App. Galveston 1948, writ ref'd n.r. e.); *Huth v. Huth*, supra. As stated by our Supreme Court in *Jerrard v. McKenzie*, 61 Tex. 40 (1884), where an independent executor refused to deliver the funds which had been bequeathed to two minor heirs,

" . . . the district court, by virtue of its general powers, can, in a proper case, call the independent executor to account, and can compel him to surrender to the duly appointed guardian, property or funds of the ward which may be in his possession. . . ."

The case of *Redditt v. Quinn*, 215 S.W.2d 367 (Tex.Civ.App. Eastland 1948, writ ref'd n.r.e.), does not support a contrary view. In that case the undisputed evidence showed that the estate had not been fully administered, thereby making the suit to close the independent administration premature.

The Court of Civil Appeals implied that the trial court's dismissal of the action for lack of *jurisdiction* was technically incorrect, but held that the result was correct because the uncontradicted evidence revealed that the estate had not yet been fully administered. See *O'Connor v. O'Connor*, supra.

The probate court has no jurisdiction, absent a specific statutory provision, to determine controversies between an independent executor and the devisees and legatees under the will. *Griggs v. Brewster*, supra; *Gonzalez v. Gonzalez*, 309 S.W.2d 111 (Tex.Civ.App. Fort Worth 1958, no writ). And according to the decision of *Carter v. Brady*, 423 S.W.2d 946 (Tex.Civ. App. San Antonio 1967, writ ref'd n.r.e.), the Keatons could not qualify as "distributees" so as to be entitled to petition the probate court to close the administration under § 152 of the Tex. Probate Code Ann. Neither would an action under § 149 of the Code to force the executor to give bond afford adequate relief. See *Metting v. Metting*, supra. Consequently, the district court, whose powers of equity jurisdiction conferred by the constitution are as broad as those of probate jurisdiction conferred upon the county court, was empowered to entertain the suit and grant the relief justified by the pleadings and proof. *Griggs v. Brewster*, supra; *Metting v. Metting*, supra; *O'Connor v. O'Connor*, supra; *Toplitsky v. Toplitsky*, 282 S.W.2d 254 (Tex.Civ. App. Galveston 1955, writ ref'd n.r.e.). Otherwise, the Keatons would be left with no adequate remedy, a result which our law will not countenance.

Eric and Jimmie Swearingen had the legal right to transfer their contingent remainder interests in the estate, and they transferred them to the Keatons by assignments, the validity of which have not been attacked in this proceeding. The Keatons therefore had standing to bring this suit to prevent their interests in the estate lands from being destroyed or damaged by con-

---

1. Tex. Probate Code Ann. § 149A (Supp. 1978–1979).

tinuing waste. Too, their remainder interests were not limited to the estate lands, but extended to the estate itself, so they also had standing to complain of excess or unauthorized executor's fees which tended to deplete or decrease the value of their respective interests.

■ The absence of the other trust beneficiaries as parties did not prevent the court from proceeding to judgment. Although the Keatons prayed that Oldham be removed as a trustee, he was not removed, and the interests of the trust beneficiaries were not affected in any manner whatsoever. Tex.R.Civ.P. 39 and 434.

■ In points of error 5, 9(b), 10(b) and 10(c) it is urged that the court erred in limiting the independent executor's fees. Mr. Oldham had paid himself $65,000.00 in fees, but contended that he was entitled to some $87,011.22. The court found that only $60,187.13 in fees was properly earned. The basis of the disagreement between the court's figures and the executor's figures may be explained as follows: The court found that the independent administration could reasonably have been closed shortly after January 23, 1975. It also found that Mr. Oldham, as *executor*, was only authorized to pay the debts, collect and assemble the assets of the estate, and distribute them to the persons entitled thereto, and that he was not authorized to operate any business of the estate. The court then concluded that Oldham was acting as trustee of the testamentary trust, rather than as independent executor, when he operated the farming and ranching business which belonged to the estate, and he was not entitled to fees on the receipts and disbursements made in the operation of that business. We think the court was wrong in its conclusion, but nevertheless reached the right result. The independent executor had the right to operate the business of the estate if it was necessary to preserve the assets pending the necessary administration, but he was not entitled to the statutory executor's fees on

the business operation transactions unless the trial court in its discretion found that the regular statutory fee was inadequate, and there was no such finding. Tex. Probate Code Ann. § 241(a); *Dwyer v. Kaltayer*, 68 Tex. 554, 5 S.W. 75 (1887); *Walling v. Hubbard*, 389 S.W.2d 581 (Tex.Civ.App. Houston 1965, writ dism'd n.r.e.); 18 Woodward & Smith, Texas Probate & Decedents' Estates § 722, p. 86 (1971). The findings of fact revealed that, for the purpose of calculating the statutory fees, Mr. Oldham paid out and received a total of $1,219,422.72, 5% of which is $60,970.00. The trial court found $60,187.13 to be the correct amount of fee and required Mr. Oldham to reimburse the estate $4,812.87. The judgment will be reformed to require a reimbursement of $4,029.87, the difference between the $65,000.00 collected by Mr. Oldham and the $60,970.00 which was authorized.

■ The next group of points challenges the court's action in ordering Mr. Oldham to close the independent administration and distribute the assets to the trustees. The main basis of the contention is that the district court has no right to substitute its judgment for that of the independent executor as to the proper time to close the administration, especially when there are estate debts remaining to be paid. We cannot agree that the trial court acted improperly in that regard. The court found that after January 23, 1975, no further administration was necessary and the estate could and should have been closed and the assets delivered to the trustees. The evidence supports that finding. The main reasons why Mr. Oldham suggests the estate should not be closed are that executor's fees are still due and he is defending the instant suit to close the administration. These factors were resolved in the suit itself, so they constituted no bar to the court's judgment. In fact, Mr. Oldham offered in his pleadings to close the administration as soon as the instant lawsuit was resolved.

Finally, it is argued that the court erred in refusing to allow Mr. Oldham judgment

against the estate for attorney's fees incurred by him in defending this action. We have concluded that the court did not abuse its discretion in that regard.

Personal representatives are entitled to recover reasonable attorney's fees which are necessarily incurred in connection with the management of an estate, (Tex. Probate Code Ann. § 242), but the right does not extend to the prosecution of a claim by the executor against the estate. And in resisting an effort to withdraw the estate from administration, the allowance of attorney's fees depends upon whether, in resisting such effort, the representative acts in good faith and under the honest belief that the attempted withdrawal is illegal. *Rowe v. Dyess*, 213 S.W. 234 (Tex. Com.App.1919, jdgmt. adopted). *Accord, Humane Society, etc. v. Austin National Bank*, 531 S.W.2d 574 (Tex.1975). The trial court here found, upon sufficient evidence, that no legitimate cause existed for the continuation of the administration, and that Mr. Oldham prolonged the administration intentionally for the purpose of generating additional executor's fees. Under the circumstances, the court's refusal to allow attorney's fees was not error.

All of the points of error have been carefully considered and are respectfully overruled. The judgment of the trial court as reformed is affirmed.

### ON MOTION FOR REHEARING

In his motion for rehearing Mr. Oldham asserts that the undisputed evidence establishes that, during the period found by the court to have been reasonably necessary for the administration of the estate, he paid estate-owed income taxes in the sum of $8,240.00, as well as ad valorem taxes amounting to $23,003.00, and also collected $55,193.00 in tenant house and farm rentals and $8,110.00 in oil and gas royalties, none of which was included in the amount on which the statutory executor's fee was calculated by the trial court. The assertion appears to be correct. The transactions are shown in the exhibits and are apparently not contested. The trial judge probably excluded them because of his view that they were not within Mr. Oldham's authority as independent executor, but rather came within his responsibility as one of the trustees. As pointed out in our original opinion, these transactions, if they were necessary to preserve the assets during proper administration of the estate, were properly made by the independent executor and are includable in the calculation of the statutory executor's fee, since they do not constitute income or expenses from "business operations" as contemplated by the decision of *Walling v. Hubbard*, 389 S.W.2d 581 (Tex.Civ.App. Houston 1965, writ dism'd n.r.e.). The five percent (5%) fee on the total of those items amounts to $4,727.30. Consequently, the motion for rehearing will be granted in part and the judgment will be reformed to delete that portion which requires Mr. Oldham to reimburse the estate excess executor's fees.

It is so ordered.